STATE of Missouri, Respondent,

v.

Gale Leon VARVIL, Appellant.

No. 47397.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 15, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1985.

Application to Transfer Denied
April 2, 1985.

James M. Martin, St. Louis, for appellant.

John Ashcroft, Atty. Gen., John Munson Morris, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Defendant, Gale Leon Varvil, was prosecuted in a jury trial on four counts of receiving stolen property. He was acquitted of Counts I through III and convicted of Count IV. He was sentenced as a prior offender to a three-year term of imprisonment and a $5,000 fine. On appeal defend-

ant alleges seven points of error. In view of our disposition, we only consider defendant's first point which challenges the search for and seizure, *inter alia*, of a 1973 Camaro automobile, and point seven which challenges the submissibility of the State's case. We reverse and order the defendant discharged.

The defendant owned a tract of land in northern Jefferson County which was the site of two steel buildings and two mobile homes. He opened an automobile dealership in the building referred to at trial and in this opinion as building A and named the dealership D & L Auto Sales. The defendant claimed that he leased the other building, referred to as building B, to another party. These two buildings were clearly separate structures.

Police had the site under surveillance prior to the search at issue here. They suspected a "chop shop" operation which involved stolen automobile parts. On March 6, 1982, two Highway Patrol officers went to the premises in response to a request from the defendant to conduct an inspection in order to renew his dealer certification. During their visit they observed a 1977 Camaro inside building B. They later learned the car was stolen. The troopers also went inside building A during that visit. The officers stated they thought D & L Auto Sales occupied both buildings.

Later that day officers attempted to gain consent to search the premises but obtained no response. Two officers then left to apply for a search warrant while additional officers kept the premises under observation. A man identified by several names but whom we shall call William Remspecher was seen going into building A during this surveillance.

A search warrant was issued and given to Troopers Ralph Campbell and Paul Jones who turned it over to Sheriff's Deputy Ronnie Jones who was assigned to execute the warrant. Late in the evening the officers returned with the search warrant. Building B was searched first and officers found the 1977 Camaro, another car and other items. The officers, believing the warrant covered both buildings, then broke into building A. A man, identified as Remspecher, was found inside and arrested. Officers testified this man was seen earlier in the day during the dealer inspection in building B by the 1977 Camaro and was the man seen entering building A during the surveillance that evening. During a search of building A, officers found, among other items, a 1973 Camaro, which was found to have been stolen.

Defendant was prosecuted on four counts of receiving stolen property. Counts I, II and III charged him with acting with another (Remspecher) in receiving stolen property. In Count I the stolen property was a 1977 Camaro automobile which was found in building B. In Count II the stolen property was a 1979 Thunderbird which was found in building B. In Count III the stolen property was a 1982 pickup truck which was found in plain view parked outside building A. In Count IV defendant was charged with acting individually. The stolen property was a 1973 Camaro automobile found inside building A. As previously stated, defendant was acquitted of Counts I, II and III.

■ We now consider defendant's first point of error. The first question is whether the search warrant itself justified the search of building A. The scope of a search warrant is limited by the terms of its authorization. *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). However, "in the execution of a search warrant, officers may seize items not specified in an otherwise valid warrant, when the item is reasonably related to the purpose of the search and its seizure is within a recognized exception to the requirement for a search warrant." *State v. Clark*, 552 S.W.2d 256, 260 (Mo. App.1977). Yet, "[i]t is well accepted that the authority to search granted by any warrant is limited to the specific places described in it, and does not extend to additional or different places." *United States v. Heldt*, 668 F.2d 1238, 1262 (D.C. Cir.1981), *cert denied*, 456 U.S. 926, 102

S.Ct. 1971, 72 L.Ed.2d 440 (1982); *United States v. Alberts*, 721 F.2d 636, 639 (8th Cir.1983).

■ The State essentially argues that the warrant describes the entire acreage owned by defendant. We disagree. In addition to the obvious geographic separation of buildings A and B, we look to the application for search warrant and the warrant itself. The pertinent portion of the warrant stated:

a 1977 Chevrolet Camero, [sic] vehicle identification number 1S87U7L508919 black and silver in color, and stolen on or about March 5, 1982, in St. Louis County, Missouri, is now being kept and held at the following location, located within Jefferson County, Missouri:

the northern-most metal building, tan in color, approximately 30 feet by 90 feet, located 300 feet north of Lion's Den Road at a point approximately 1.2 miles east of its intersection with Missouri Highway 21, on the premises known as D and L Auto Sales,

NOW THEREFORE, these are to command that you search the said premises above described within ten (10) days after the date of the issuance of this warrant....

The application was in substantially the same language. Affidavits by Troopers Jones and Campbell mentioned "both buildings" but did not further describe them or state where the 1977 Camaro was located, or which building was northernmost.

The warrant only describes with particularity building B. While it is true the warrant authorizes a search of "the said premises above described" and the word "premises" was used above in the phrase "on the premises known as D and L Auto Sales," we cannot accept the State's argument that this authorized a search of the entire property.

The "premises above described" clearly refers to one building. The "premises known as D and L Auto Sales" is not *described* except for the one building. Since the warrant states the vehicle is to be found at the particular building, there is no reason for the warrant to authorize the search of any other structure, and it did not.

■ The application and the warrant both complied with the specificity requirements of the U.S. and Missouri Constitutions, U.S. Const. Amend. IV and Mo. Const. Art. 1, § 15, and § 542.276, RSMo (Supp.1984). They specifically described a 1977 Camaro located in building B. The officers went to building B and seized the item specified in the search warrant. Once they seized that automobile and other-related evidence inside building B or in plain view outside, they were finished. They had accomplished the purpose of the search warrant. Whether the officers could have properly obtained a search warrant for building A or whether they could have searched building A for the 1977 Camaro if they had not found it in building B is not before this court. The search warrant was issued for a specific building and the item described therein was found in that building. We therefore hold that the search warrant did not authorize the search of building A and the seizure of the 1973 Camaro automobile.

The next question is whether the search of building A was justified under the good faith exception of *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *Massachusetts v. Sheppard*, —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

In *Leon*, a facially valid search warrant was issued allowing police to search some residences and automobiles for numerous items. The defendants argued that the affidavit supporting the warrant was insufficient to establish probable cause. The Supreme Court, assuming that probable cause was lacking, held that where the executing officer reasonably relies in good faith on a facially valid warrant, evidence obtained in the search should not be suppressed, under a good faith exception to the exclusionary rule.

In *Sheppard*, a police officer was unable to find a proper form. He used a warrant

application form which had previously been used in another district to search for controlled substances, while in his case the officer wanted to search for several items other than controlled substances. The officer changed the name of the district to make it correct, but the reference to controlled substances was not deleted in the part of the application which would become the warrant itself. A judge, after being advised of the problem with the form, told the officer the necessary changes would be made. The judge in fact made some changes and issued the warrant, assuring the officer it was sufficient to conduct the search as requested. At trial, the court found the warrant failed to particularly describe the items to be seized, but allowed the fruits of the search to be used as evidence because the court found the officers acted in good faith relying on the warrant. The Supreme Court, using the test in *Leon* of whether the officers reasonably believed that the search they conducted was authorized by a valid warrant, found the good faith exception of *Leon* had been met here. In *Sheppard*, as in *Leon*, the case did not involve police going beyond the scope of a warrant.

■ Both *Leon* and *Sheppard* deal with situations where police officers acted in reliance upon search warrants that subsequently were held to be defective. In other words, the judge or magistrate, not the police made the critical mistake. *Sheppard*, 104 S.Ct. at 3429. In those situations the fourth amendment does not mandate suppression of the evidence "particularly where an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted *within its scope*." (Emphasis added.) *Leon*, 104 S.Ct. at 3420. "[T]he exclusionary rule is designed to deter *police* misconduct rather than to punish the errors of judges and magistrates." *Leon*, 104 S.Ct. at 3418. (Emphasis added.)

■ *Leon* and *Sheppard* essentially deal with bootstrapping a search warrant which is defective because of judicial error. In this case, the search warrant was not defective. The scope of the warrant simply did not include building A. The question of good faith reliance on the warrant is therefore not a viable issue.

Three officers testified in this case that they learned shortly after the search began that the warrant covered only building B, but that they had thought prior to the start of the search that it covered both buildings. The mistake was theirs, not the judge's. Since the officers readily learned of the warrant's limits after the search had started, it is clear that there was an opportunity to learn of the limits prior to the search. "In order for a warrant's limitations to be effective, those conducting the search must have read or been adequately apprised of its terms." *United States v. Heldt*, 668 F.2d at 1261.

The Supreme Court in *Sheppard* recognized the possibility of circumstances such as these arising, and clearly stated it was not deciding whether the good faith exception would apply:

Normally, when an officer who has not been involved in the application stage receives a warrant, he will read it in order to determine the object of the search. In this case, Detective O'Malley, the officer who directed the search, knew what items were listed in the affidavit presented to the judge, and he had good reason to believe that the warrant authorized the seizure of those items. Whether an officer who is less familiar with the warrant application or who has unalleviated concerns about the proper scope of the search would be justified in failing to notice a defect like the one in the warrant in this case is an issue we need not decide. We hold only that it was not unreasonable for the police in this case to rely on the judge's assurances that the warrant authorized the search they had requested.

*Sheppard*, 104 S.Ct. at 3429 n. 6. In the present case, the affidavits presented to the judge said nothing about any items in a second building. A reference was made to "both buildings," but building A was not described, nor was any item inside. The

warrant application and the warrant only referred to the northernmost building and only to the 1977 Camaro. *Sheppard* is limited to a situation that is not found in the present case. The Court stated: "Whatever an officer may be required to do when he executes a warrant without knowing beforehand what items are to be seized, we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and action, that the warrant he possesses authorizes him to conduct the search he has requested." *Sheppard*, 104 S.Ct. at 3429.

We therefore hold that the search of building A cannot be justified by the good faith exception rule.

We turn now to the question of whether the search of building A was justified in the absence of a search warrant.[1] "In general, an entry and search without a warrant are deemed unreasonable under the Fourth Amendment to the Constitution of the United States unless the action falls within certain carefully delineated exceptions.... The burden is on the State to show an exception exists." *State v. Epperson*, 571 S.W.2d 260, 263 (Mo. banc 1978), *cert denied*, 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979).

■ The police arrested Remspecher in building A without an arrest warrant and without a search warrant for that building. In this case we are not concerned about a possible violation of Remspecher's rights. *See e.g., Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *State v. Mayes*, 654 S.W.2d 926 (Mo.App.1983). The issue here is the search, not the arrest. Whether the police had an arrest warrant is immaterial; the question is whether the search of building A was reasonable from defendant's Varvil's viewpoint. *Steagald v. United States*, 451 U.S. 204, 216, 101 S.Ct. 1642, 1649, 68 L.Ed.2d 38 (1981). The State con-

cedes that under *Steagald* police must usually have a search warrant to enter the premises of a third party for the purpose of effecting the arrest of a suspect located there.[2] The arrest of Remspecher does not give the police the right to search Varvil's property without a search warrant in absence of consent by Varvil or exigent circumstances. *Steagald*, 451 U.S. at 216, 101 S.Ct. at 1649. Since there was no consent, we consider whether exigent circumstances justified the warrantless search of building A and the seizure, *inter alia*, of the 1973 Camaro automobile. We consider whether this case falls within the "need for help" or "emergency" exception discussed in *State v. Epperson*, 571 S.W.2d 260.

■ Several factors are considered when deciding whether exigent circumstances exist. They include: (1) that a grave offense is involved, particularly a violent crime; (2) the suspect is reasonably believed to be armed; (3) a clear showing of probable cause to believe the suspect committed the offense; (4) strong reason to believe the suspect is in the premises to be entered; (5) a likelihood the suspect will escape if not swiftly apprehended; (6) the entry, though not consented, is made peaceably. *State v. Timmons*, 574 S.W.2d 950, 955 (Mo.App. 1978).

■ The present case shows no exigent circumstances. The man inside building A had been there for several hours prior to the search of that building. The entire area was staked out. There was little likelihood he could have escaped. Police had ample time to obtain a proper search warrant and arrest warrant. The search was not justified as a "need for help" or an "emergency." Remspecher was armed, but no shots had been fired for the several hours he was in the building prior to the search. There was no violence involved.

---

1. We review this issue even though the State in its brief appears to rely solely on the theory the warrant included building A.

2. Although the *Steagald* case speaks of a home, clearly a place of business comes within the protection of the fourth amendment. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311, 98 S.Ct. 1816, 1819, 56 L.Ed.2d 305 (1978).

We therefore hold that the trial court erred in failing to suppress the evidence seized in the search of building A and in particular the 1973 Camaro automobile. In view of our holding we consider defendant's challenge to the submissibility of the State's case. Having reviewed the record, it is clear that without the evidence seized in building A the State does not have a submissible case against the defendant. A remand of this case for further proceedings would be futile.

The judgment of the trial court is reversed and the defendant is ordered discharged.

DOWD, P.J., and CRIST, J., concur.