STATE of Missouri, Respondent,

v.

Alisha KIMBERLEY, Appellant.

No. WD 60529.

Missouri Court of Appeals, Western District.

April 8, 2003.

As Modified on Denial of Rehearing May 27, 2003.

Deborah Daniels, Asst. Prosecuting Attorney, Columbia, MO, for Respondent.

Daniel L. Viets, Columbia, MO, for Appellant.

Before HAROLD L. LOWENSTEIN, JAMES M. SMART, JR., and THOMAS H. NEWTON, JJ.

PER CURIAM.

Alisha Kimberley appeals her convictions for possession of a controlled substance and possession of drug paraphernalia. The court suspended the imposition of sentence ("SIS") on the controlled substance conviction and fined her $200.00 on the paraphernalia conviction. The State moves that the appeal be dismissed. We grant the motion to dismiss the appeal as to the controlled substance conviction and deny the motion to dismiss as to the paraphernalia conviction.

On December 24, 2002, we issued an opinion in which we concluded that the evidence was not sufficient to support the conviction of possession of drug paraphernalia. On motion for rehearing, the State pointed out factual matters which it asserted we had misinterpreted. Our review of the record confirmed the accuracy of these contentions. Because these factual items were critical to the analysis under our standard of review, we now affirm the conviction.

**Factual and Procedural Background**

On November 21, 2000, Kimberley was charged with one count of possessing under thirty-five grams of marijuana, a controlled substance, in violation of § 195.202 RSMo 2000.[1] She was also charged with one count of possessing drug paraphernalia with intent to use in violation of § 195.233. Both charges were class A misdemeanors.

Kimberley filed a motion to suppress evidence, claiming an illegal search and seizure. The motion was denied. After a bench trial, the court convicted Kimberley on both counts.

█ The evidence and all inferences flowing from the evidence are viewed in the light most favorable to the verdict. *State v. Clay,* 975 S.W.2d 121, 130 (Mo. banc 1998). At approximately 6:00 a.m. on October 21, 2000, the Columbia Police Department began investigating a report that three men were in back of 1417 Rosemary, breaking up furniture and throwing pieces of it around. A neighbor reported that some of the pieces struck his house. Two officers arrived on the scene and questioned the caller, a neighbor of 1417 Rosemary, about the disturbance. One of the officers then knocked on the back door at 1417 Rosemary, which appeared to be the entrance to apartment A. The other officer remained several feet behind him. The officers testified that, immediately after the knock, the outside light over the door went out. At this time the area was relatively dark because the sun had not risen.

1. All statutory references are to Revised Statutes of Missouri 2000, unless otherwise indicated.

The officer who knocked on the door heard the "pump action of a shotgun" (indicating the chambering of a round) coming from inside the house. That officer ran past the other officer, yelling that someone had a gun. The officers saw a door open part way and saw a shotgun barrel protruding out the doorway, being held by someone's arms, making a sweeping motion. The officers had their weapons drawn. They yelled to identify themselves as police officers. The individual continued holding the shotgun. They yelled at him to put the shotgun down. He declined. The officers took cover, one at the side of the building. The officer at the side of the house heard the individual stepping on the steps, then walking toward him. He continued to yell "put the gun down." As the individual continued to approach, the officer ran to the street, got behind a car, and called for backup.

Shortly thereafter, officers observed a man running from the house. That man, Paul Hoffman, was captured and taken into custody. No weapon was found on him. Hoffman was not cooperative, refusing to discuss what had transpired. At about the same time, other officers arrived and set up a "perimeter" around the house, which contained three apartments, one on each of the three floors. Shortly thereafter, the department's Special Tactics and Response ("STAR") Team arrived. A bullhorn was used for almost an hour to get anyone else inside to come out.

Sometime between 9:30 and 10:00 a.m., officers for the STAR (equivalent to "SWAT") team entered the first floor apartment without a warrant and without consent. The STAR team went in with special protective equipment. The purpose of the entry, according to the police, was to secure the residence, to "make sure no one was hurt," and help anyone who needed medical assistance. When the officers entered the building, they found Alisha Kimberley lying on the couch, apparently asleep. She did not immediately respond to loud commands, but finally responded. Marijuana and drug paraphernalia were observed in plain view on the coffee table approximately two feet from where Kimberley was lying. She was handcuffed and informed that she was under arrest. The police then escorted her out of the house and into the back of a patrol car.

Other officers finished clearing the residence to be sure no one else was inside. No one else was found. The other two men who reportedly were part of the original disturbance were never located. The police recovered a shotgun from the residence. A "bong" used for smoking marijuana was found resting on the floor in a corner of a "computer room" in the apartment.

Kimberley was taken to the police station. She was questioned by the officer who issued her a summons. He discovered that Kimberley was a resident of the apartment where the drugs and paraphernalia were found. Kimberley shared the apartment with Paul Hoffman, who had run from the apartment and was apprehended. She was charged with possession of the marijuana and the paraphernalia.

Kimberley waived a jury trial, and tried the case to the court. At trial, although she denied use or possession of the contraband, and denied that she consented to its use in her presence, she acknowledged that she was a resident of the apartment where the drugs and paraphernalia were found. She was aware that the paraphernalia was used to smoke marijuana, and she acknowledged being present when marijuana was smoked on a previous occasion.

Kimberley was found guilty by the trial court on both counts. The court suspend-

ed imposition of sentence on Count I (controlled substance) and imposed a sentence of a $200.00 fine on Count II (paraphernalia). This appeal follows.

## Motion to Dismiss

The State moves to dismiss the appeal based on the argument that a suspended imposition of sentence is not a final, appealable judgment. *State v. Lynch*, 679 S.W.2d 858, 860 (Mo. banc 1984). For this reason, the State argues, the appeal as to Count I must be dismissed. Likewise, the State contends, the appeal as to Count II should also be dismissed. The State reasons that it, too, is "not ripe for appeal since Missouri Courts have held that both counts of a two count information must be disposed of and if not, then the appeal is premature," citing *State v. Thomas*, 801 S.W.2d 504, 505 (Mo.App.1991).

■ A suspended imposition of sentence is not a final judgment. *Lynch*, 679 S.W.2d at 862. The rule of *Lynch* has been followed on multiple occasions. See, e.g., *State v. Burns*, 994 S.W.2d 941, 943 (Mo. banc 1999); *State v. Detherage*, 869 S.W.2d 293 (Mo.App.1994); *State v. Hanners*, 827 S.W.2d 273, 274 (Mo.App.1992); *State v. Sandbothe*, 750 S.W.2d 664, 665–66 (Mo.App.1988). The right of appeal in criminal cases is limited to final judgments, pursuant to § 547.070. *Lynch*, 679 S.W.2d at 859–60.

■ In this case, the court suspended the imposition of sentence for Kimberley's conviction on Count I. Because no sentence was imposed, it is not a final appealable judgment. Thus, the motion to dismiss as to Count I is granted.

The State's argument that the appeal on Count II also should be dismissed is meritless. The State contends that the appeal as to this count is not ripe because there was an SIS on Count I. The State bases this argument on *State v. Thomas*, 801 S.W.2d at 505. The *Thomas* court stated: "This appeal is premature for the reason that there has been no disposition of one count of the two-count information." *Id.* There, however, the trial court had declared a mistrial with respect to one of the counts, and that count remained pending in the trial court at the time of appeal. *Id.* The *Thomas* court held the appeal in abeyance and remanded the cause to the trial court to dispose of that count, after which it reinstated the appeal. *Id.*

■ The *Thomas* case is inapposite to the case at hand. Here, there was not a mistrial. Kimberley was convicted on both counts; the court merely suspended its imposition of sentence as to Count I. The appeal cannot be held in abeyance and remanded back to the trial court for disposition on Count I, as in *Thomas*. Here, the disposition of Count I is suspended until the completion or revocation of Kimberley's two-year probation.

Not only is the *Thomas* case inapposite, but there is authority supporting Kimberley's position. In numerous Missouri cases, the appeal has been dismissed as to the SIS count, but allowed to go forward as to all other counts. See, e.g., *State v. Downen*, 952 S.W.2d 807, 808 n. 2 (Mo. App.1997); *Hanners*, 827 S.W.2d at 274; *Sandbothe*, 750 S.W.2d at 665–66; and *State v. Williams*, 682 S.W.2d 499 (Mo. App.1984). The motion to dismiss is denied as to Count II.

## Failure to Exclude Evidence

Kimberley contends that the court erred in denying her objection to the admission of the evidence seized when the Columbia Police Department entered the apartment. She contends the State failed to show exigent circumstances, an exception to the warrant requirement. She argues the po-

lice should have obtained a warrant before entering the apartment.

■■■ Generally, the trial court has broad discretion to admit or exclude evidence at trial. *State v. Adams,* 51 S.W.3d 94, 98 (Mo.App.2001). This court will reverse only upon a showing of a clear abuse of discretion. *Id.* To the extent that the ruling involves factual determinations, this court need only determine whether the evidence was sufficient to support the ruling. *See State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990). We will reverse only where the defendant shows the ruling was clearly erroneous. *State v. McCullum,* 63 S.W.3d 242, 255 (Mo.App.2001). However, we also must "consider the ruling in light of the proper application of the precepts of the Fourth Amendment." *State v. Stevens,* 845 S.W.2d 124, 128 (Mo. App.1993) (citing *Florida v. Royer,* 460 U.S. 491, 493, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). When there is little or no issue concerning the facts, the question of whether the Fourth Amendment has been violated is a question of law, and is therefore reviewed *de novo. State v. Ricketts,* 981 S.W.2d 657, 659 (Mo.App.1998) (citing *State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998)).

■■■ Pursuant to the Fourth Amendment, the entry and search of Kimberley's apartment without a warrant was presumptively unreasonable. *State v. Peters,* 695 S.W.2d 140, 143 (Mo.App.1985). "In general, an entry and search without a warrant are deemed unreasonable . . . unless the action falls within certain carefully delineated exceptions. . . ." *State v. Varvil,* 686 S.W.2d 507, 512 (Mo.App.1985) (quoting *State v. Epperson,* 571 S.W.2d 260, 263 (Mo. banc 1978)). One of those exceptions involves the existence of "exigent circumstances," as explained in *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (The police may enter a

private home without a warrant when exigent circumstances compel them to do so). *State v. Wright,* 30 S.W.3d 906, 910 (Mo. App.2000). "Exigent circumstances exist if the time required to obtain a warrant 'would endanger life, allow a suspect to escape, or risk the destruction of evidence because of an imminent police presence.' " *Id.* Factors to be considered include:

> (1) the gravity of the offense; (2) reasonable belief by the police the suspect is armed; (3) more than minimal probable cause to believe the suspect committed the crime; (4) strong reason to believe the suspect is in the premises in question; (5) likelihood of escape if prompt action is not taken; and (6) the entry is made peaceably.

*State v. McCullum,* 63 S.W.3d 242, 256 (Mo.App.2001); *Varvil,* 686 S.W.2d at 512. In *Epperson,* the Court discussed the exceptions to the warrant requirement, including the "need for help" and "emergency" situations encompassed in the "exigent circumstances" exception. 571 S.W.2d at 264. Here, the officers testified that the purpose of the entry was to secure the residence, attend to anyone who might need medical assistance, and make sure no one was hurt.

In *State v. Davis,* 685 S.W.2d 907, 911 (Mo.App.1984), exigent circumstances were found where "police officers responded to reports of gunshots [and] saw a man holding a long gun." The man seemed to see the officers. He then entered a home which they did not know to be his and which may have been occupied. *Id.* The man left the door ajar and did not respond when the officers called to him. *Id.* The *Davis* court found that those facts constituted exigent circumstances justifying a warrantless entry into a private home. *Id.*

■■■ In the case at hand, there was evidence from which the trial court could

have reasonably believed the entry and search were justified under the "exigent circumstances" exception. The presence of a shotgun (apparently loaded), the threatening of the officers with the shotgun, and the report of the neighbors concerning bizarre behavior supported the gravity of the offense. Police knew that someone in the apartment was armed. Someone in the apartment had, according to officers, committed the crime of threatening the officers. They had strong reason to believe that the suspect or suspects were still in the premises in question. See *McCullum*, 63 S.W.3d at 256. Hoffman, whom they had apprehended, was not cooperating. Hoffman refused to discuss the circumstances. The police could have reasonably feared that other residents were still inside and were not responding because they needed help. The Fourth Amendment does not bar police officers from making warrantless entries and searches when they "reasonably believe that a person within is in need of immediate aid." *State v. Butler*, 676 S.W.2d 809, 814 (Mo. banc 1984) (quoting *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). The weapon had not yet been recovered. Two of the three people from the initial report had not yet, as far as officers knew, exited the house. There may well have been residents still in the apartment house. Because the trial court's ruling is "plausible in light of the record," this court may not substitute its discretion for the trial court's, even if convinced it would have weighed the evidence differently. *State v. Milliorn*, 794 S.W.2d 181, 184 (Mo. banc 1990); *State v. Talbert*, 873 S.W.2d 321, 323 (Mo.App.1994). Point I is denied.

### Evidence of Possession

Kimberley next asserts that the trial court erred because there was insufficient evidence that she possessed the marijuana and the paraphernalia found in close proximity to her at the scene. Because the appeal as to Count I is dismissed, we do not address the possession of the marijuana, but address only the paraphernalia possession of Count II, although the facts entirely overlap.

In reviewing the sufficiency of the evidence, this court must accept as true all evidence and inferences that tend to support the verdict and disregard all to the contrary. *State v. Schaal*, 806 S.W.2d 659, 667 (Mo. banc 1991). The question is whether the evidence, viewed in a light most favorable to the verdict, is sufficient to support that verdict. *State v. Brown*, 660 S.W.2d 694, 699 (Mo. banc 1983). This court must decide whether all the evidence, direct and circumstantial, is sufficient to provide a rational factfinder with proof beyond a reasonable doubt as to the elements of the crime. *State v. Todd*, 70 S.W.3d 509, 519 (Mo.App.2002). We seek to make sure that the finding of guilt is not based on speculation. *See State v. Grim*, 854 S.W.2d 403, 414 (Mo. banc 1993). Where there are permissible inferences which could reasonably establish guilt beyond a reasonable doubt, this court does not sit as a "super juror" with veto powers. *See Id.*

The fact-finder is free to determine the weight and credibility of the evidence and is free to believe all, some, or none of the testimony of any witness. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). Both Kimberley and her co-tenant, Hoffman, testified in the case. The trial court, as fact finder, disbelieved both of them. Therefore, we disregard their testimony for purposes of our analysis, except to the extent that anything in that testimony can support an inference of Kimberley's guilt.

■ Kimberley was charged with possession of paraphernalia.[2] "Possession" is defined:

[A] person, with the knowledge of the presence and nature of [the contraband], has actual or constructive possession of [it]. *A person has actual possession if he has the [contraband] on his person or within easy reach and convenient control.* A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the [contraband] either directly or through another person . . . is in constructive possession of it.

Section 195.010(32) (emphasis added). To sustain a conviction for possession, the State must establish that the defendant "knowingly and intentionally possessed the proscribed [contraband]." *State v. Moiser,* 738 S.W.2d 549, 558 (Mo.App.1987). The Missouri Supreme Court explained:

[C]onscious, intentional possession, either actual or constructive, must be established. The state must also show that the defendant was aware of the presence and nature of the [contraband] in question. Both possession and knowledge may be proved by circumstantial evidence. If actual possession has not been shown, "constructive possession will suffice when other facts buttress an inference of defendant's knowledge of the presence of the [contraband]."

*State v. Barber,* 635 S.W.2d 342, 343 (Mo. 1982) (citations omitted).

■ The mere presence of the accused on shared premises where contraband is found is not enough circumstantial evidence to show ownership or possession. *State v. Bowyer,* 693 S.W.2d 845, 847 (Mo.

App.1985) (citing *State v. Wiley,* 522 S.W.2d 281, 292 (Mo. banc 1975)). Mere presence at a place where contraband is found is not enough to create an inference of control. *Todd,* 70 S.W.3d at 521. Additional factors are required to prove conscious possession. *Id.* Some of those factors are: routine access to an area where contraband is kept; large quantities of the substance at the scene where the accused is arrested; self-incriminating statements or admissions showing consciousness of guilt; commingling of contraband with defendant's personal belongings; and the substance being in public view and easily accessible by the defendant. See *Barber,* 635 S.W.2d at 344; *State v. May,* 71 S.W.3d 177, 184 (Mo.App.2002); *Bowyer,* 693 S.W.2d at 847; and *State v. Kerfoot,* 675 S.W.2d 658, 662 (Mo.App.1984). Inferences drawn from defendant's statements, admissions, conduct, or the situation itself may also be considered. See *State v. Rivers,* 554 S.W.2d 548, 551 (Mo.App.1977). The totality of the circumstances must be considered in determining whether additional incriminating circumstances have been proved. *May,* 71 S.W.3d at 184.

Kimberley relies upon *State v. Moore,* 659 S.W.2d 252, to support this point on appeal. In *Moore,* an officer approached a house in the early morning hours to give information to an individual he thought resided in the house. The officer passed a window through which he could see one person asleep on a couch and another in a chair. Between them was a coffee table on which there was a container appearing to contain marijuana. He knocked on the door, which was answered by Moore, who informed him that the man he sought was not there. The officer returned about an hour later, having been advised that there

2. Section 195.233 provides in pertinent part: It is unlawful for any person to use, or to possess with intent to use, drug parapher-

nalia to . . . inject, ingest, inhale, or otherwise introduce into the human body a controlled substance[.]

was probable cause to arrest the owner of the house for possession of marijuana. As he and other officers walked past the window, they again saw the defendant on the couch. Neither the other man nor the marijuana was visible at this time. The defendant answered the door again, and was arrested for possession of marijuana. The marijuana was voluntarily retrieved by defendant and handed to police. After his conviction defendant contended on appeal that his arrest was unlawful because the officers lacked probable cause. This court reversed the conviction in *Moore*, holding that although there was probable cause to believe *someone* was engaged in the commission of an offense, there was no probable cause to believe Mr. Moore was engaged in the commission of an offense under these particular circumstances. The court held that in view of the fact that the officers .knew nothing about Moore's occupancy and control of the premises other than the fact that on that night he was sleeping in the living room, "probable cause required some additional indicia of possession greater than mere unconscious proximity." *Id.* at 258.

Kimberley's situation is analogous to that of the defendant in *Moore* only to the extent that the evidence shows that she, like the defendant in *Moore*, was asleep in the room where drugs were found when the officers entered. *Id.* at 254–55. Here, however, the court was not required to believe that Kimberley was asleep when the officers entered because the court could disbelieve her testimony that she

was asleep. Also, in *Moore*, the issue was whether the officers had probable cause to arrest when they did not know that the defendant was a resident of the premises at the time. *Id.* at 255. Here the issue is the sufficiency of the evidence to convict in view of the evidence that Kimberley *was* a resident of the premises.

██  There were other individuals at the apartment that morning. A neighbor observed several men, apparently Hoffman and his friends, in the back yard early that morning, destroying some furniture. Had the court been bound to believe that Kimberley was asleep when discovered, that fact would have been of assistance to her, in view of the fact that others had been in the apartment recently. However, as we have noted, the trial court was not required to believe that she was asleep when officers entered the apartment. The State points out that the fact that the SWAT team entered the apartment after the extensive use of bullhorns, after she had supposedly (according to her testimony) been asleep for nine hours, and the fact that she did not respond to loud verbal commands, is more indicative of the notion that she was feigning sleep than it was that she was actually asleep.[3]

Also, there were other indications, besides the location of the paraphernalia, that Kimberley was guilty of possession. There was an additional item of paraphernalia, a "yellow glass-colored bong," found in a corner, apparently in plain view, in another room (a computer room) to which she had access. Kimberley acknowledged that it was a "large bong" and that it was a

---

3. During the pre-trial motion to suppress, one of the officers indicated he could "tell" by her appearance she "had been sleeping." This testimony was not repeated at trial, and, in any event, is not necessarily conclusive on the trial court. Appellant fails to demonstrate that the trial court is bound by the officer's opinion that Kimberley was asleep. Moreover, even if the trial court believed she was

asleep, the trial court was not bound by her testimony as to how long she was asleep. The trial court could have considered the possibility that she was awake, and participated in the marijuana use, in the early morning hours, and then went to sleep with the effect of the marijuana in her system causing her to sleep especially soundly.

"couple feet tall." Kimberley admitted that she recognized the contraband for what it was, and that she knew that marijuana had previously been smoked in the apartment. Hoffman and Kimberley said that the use of the marijuana in the apartment was against Kimberley's wishes; again, however, the court was not required to believe her testimony.

Because of the presence of the "dugout," a ceramic pipe, and marijuana on a television tray in very close proximity to Kimberley (and under her apparent control), just about two feet away from Kimberley as she lay on the couch, with some seeds spilled on the floor near the couch (as though used by a person on the couch), in Kimberley's own apartment, with another large item of paraphernalia accessible to her in another room, we cannot say the trial court was being speculative in concluding (beyond a reasonable doubt) that Kimberley possessed the contraband. The totality of the circumstances was such that a rational fact finder *could* believe beyond a reasonable doubt that Kimberley knowingly possessed the paraphernalia. It was not necessary for the State to eliminate all theoretical possibilities of her innocence. *See State v. Grim*, 854 S.W.2d 403, 414 (Mo. banc 1993). Accordingly, under our standard of review, we must affirm the conviction.

### Conclusion

In accordance with this opinion, we grant the motion to dismiss the appeal as to the controlled substance conviction and deny the motion to dismiss as to the paraphernalia conviction. For the reasons set forth above, the judgment of conviction for possession of drug paraphernalia is affirmed.