

# In the
# Missouri Court of Appeals
## Western District

STATE OF MISSOURI,

Respondent,

v.

JEFFREY HOLMES,

Appellant.

WD77662

OPINION FILED:

APRIL 5, 2016

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable David Michael Byrn, Judge**

**Before Division Four: Alok Ahuja, P.J., Anthony Rex Gabbert, J., Thomas Fincham, Sp. J.**

Jeffrey Holmes appeals his conviction for the crime of acceding to corruption. He first contends that there was insufficient evidence to prove beyond a reasonable doubt that he "solicited" or "knowingly accepted" sex from a prostitute, C.C., in exchange for his official discretion not to arrest her. He further contends that there was an impermissible variance between his indictment and the relevant verdict director in that the indictment used the term "knowingly accepted" but the verdict director used the term "solicited." We affirm.

## Facts & Background

On August 24, 2012, Jeffrey Holmes was charged by indictment with two counts of the class D felony of acceding to corruption, two counts of sexual assault, and one count of deviate sexual assault. Following a jury trial, Holmes was convicted of one count of acceding to

corruption. That count stated that Holmes, "being a police officer, knowingly accepted from C.C. [a prostitute] a benefit, namely sexual and deviate sexual intercourse in return for his official judgment, decision, action, or exercise of discretion as a police officer namely, not arresting C.C." The evidence adduced at trial, viewed in the light most favorable to the verdict, is as follows.

In March 2012, Holmes used his home computer during off-duty hours to repeatedly access the Backpages.com advertisement of a prostitute, C.C. On March 23, Holmes used his personal cell phone to arrange an appointment with C.C. at a local hotel; the hotel was not located in the sector that Holmes regularly patrolled in the course of his official duties. Holmes and C.C. discussed prices throughout the evening of March 23 and he eventually went to the hotel to meet her. C.C. testified that when Holmes arrived at her room, he was wearing clothing reminiscent of a police uniform and he carried a holstered gun and handcuffs, but he was not wearing his official nametag or police radio.

When C.C. opened the door, Holmes told her that she was "busted for prostitution." He forced his way into the room and closed the door, then asked her to put her hands behind her back to be handcuffed. C.C. declined to do so and Holmes responded, "Well, either you go to jail for prostitution or you're going to give me what I want." C.C. testified that she could not leave the room because Holmes was blocking the door. Holmes began asking C.C. questions and jotted down her I.D. information in a small notepad.

Some time later, Holmes put his arm around C.C.'s back and repeatedly told her that he did not have any money on him so he would have to go to an ATM to get funds. C.C. testified that he did not actually go to an ATM, and she understood that Holmes "wanted sex without paying, to get what he want[ed]" in exchange for not arresting her. Holmes then took his gun out

2

and laid it on the table while C.C. performed oral sex on him. C.C. and Holmes then had sexual intercourse.

After Holmes finished having sex with C.C., he left without arresting her and filed no report on her prostitution activities. He did not include the visit to the hotel in his official activity log and he kept C.C.'s identifying information to himself in contravention of departmental policy. Holmes told C.C. and the hotel's front desk attendant that he would be back the next day to conduct a prostitution "bust," but he did not return on any day thereafter to do so. Holmes told the front desk attendant that C.C. had agreed to act as a confidential informant for the "bust," but he did not report such information to his superiors as required by departmental policy. Holmes did not work in the KCPD Vice Department, nor did he have any authorization to conduct an undercover Vice "bust."

After Holmes left her hotel room, C.C. texted a friend named Sonny to tell him what happened, but she did not report Holmes to the police at that time. C.C. made her first official statement regarding the incident on April 18, 2012, when several other officers came to the hotel upon complaints of prostitution occurring there. The officers questioned her but did not believe her story at that time. On April 26, 2012, C.C. made a second statement regarding Holmes when she went to a patrol station to report her car stolen. She spotted Holmes in his uniform standing outside and informed two other officers that he was the man that assaulted her. C.C. was asked to give a statement to the Sex Crimes Unit and told the detectives, "All I know is that the MF fucked me without paying and that's rape." C.C. later identified Holmes in a photo lineup and at trial. Holmes declined to make a statement to police, declined to testify at trial, and declined to make a statement for his Sentencing Assessment Report.

3

During the jury trial held in April 2014, Holmes moved for a judgment of acquittal at the close of the prosecution's evidence and at the close of all evidence; the court denied both motions. Instruction 5, the verdict director on Count I (*i.e.*, acceding to corruption regarding C.C.), stated that the jury must find Holmes guilty if it believed that he "solicited from [C.C.] deviate sexual intercourse or sexual intercourse." Holmes's counsel did not object to this or any other jury instruction.

The jury ultimately found Holmes guilty on Count I but did not convict him on any of the other charges. In accordance with the recommendation of the jury, the court sentenced Holmes to fifteen days in county jail and a $2,500 fine. His sentence has been completed at this time and he currently remains a Kansas City police officer pending the outcome of his appeal. This appeal follows.

## Analysis

### 1. Sufficiency of the Evidence

In his first point on appeal, Holmes contends that the trial court erred in overruling his motions for judgment of acquittal because Count I of the indictment stated that he committed the crime of acceding to corruption by "knowingly accept[ing] from C.C. sexual and deviate sexual intercourse" in return for not arresting her, but the prosecution failed to introduce evidence proving this beyond a reasonable doubt. We disagree.

When reviewing a sufficiency of the evidence claim on appeal, we are limited to determining "whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt." *State v. Jeffrey*, 400 S.W.3d 303, 313 (Mo. banc 2013). We will view the evidence "in the light most favorable to the judgment, disregarding any contrary evidence and granting the State all reasonable inferences

4

from the evidence." *State v. Bradshaw*, 411 S.W.3d 399, 401 (Mo. App. S.D. 2013) (internal citation omitted) (internal quotation omitted). The reliability, credibility, and weight of witness testimony are for the fact-finder to determine, and it is within the fact-finder's authority to believe all, some, or none of a witness's testimony in making this decision. *State v. Kimberley*, 103 S.W.3d 850, 857 (Mo. App. W.D. 2003). "Where there are permissible inferences which could reasonably establish guilt beyond a reasonable doubt, this court does not sit as a 'super juror' with veto powers." *Id.*

Pursuant to the Due Process Clause of the United States Constitution, the State in this case was required to prove each element of the crime of acceding to corruption beyond a reasonable doubt. Holmes was charged with acceding to corruption under Section 576.020.1, which provides:

> 1. A public servant commits the crime of acceding to corruption if he knowingly solicits, accepts or agrees to accept any benefit, direct or indirect, in return for:
>     (1) His official vote, opinion, recommendation, judgment, decision, action or exercise of discretion as a public servant; or
>     (2) His violation of a known legal duty as a public servant.

So long as the facts proven by the State fall within the statutory definition of "acceding to corruption" and the charging document informed Holmes of that charge, there is sufficient evidence to support Holmes's conviction. *State v. Bradshaw*, 411 S.W.3d 399, 403 (Mo. App. S.D. 2013). Here, the language of the indictment informed Holmes that he was being charged with acceding to corruption under 576.020.1, and the facts ultimately proven fell within the statutory definition of that offense. We recognize that the indictment alleged that Holmes committed the offense of acceding to corruption by "knowingly accept[ing]" sexual acts from C.C. in exchange for his official discretion not to arrest her for prostitution, while the verdict

5

director instructed the jury to find Holmes guilty if he "solicited" sexual acts from her. Judged under either standard, the evidence in this case was sufficient to support Holmes's conviction.

The evidence presented at trial first established that Holmes *solicited* sexual intercourse from C.C. by calling her to discuss the price of her services and to arrange a meeting between them at C.C.'s hotel room. Then, the evidence demonstrated that, after forcing his way into C.C.'s room while in the guise of a police officer, Holmes made it abundantly clear that he would arrest her for prostitution if she did not cooperate.[1] Finally, the evidence demonstrated that Holmes touched C.C. and told her that he had no money to give her; this, in combination with his statement that she would be arrested if she did not give him what he previously indicated that he wanted, made it plain to a reasonable person in C.C.'s situation that he was soliciting sexual favors in return for not arresting her. The above facts were proven at trial by C.C.'s testimony, the hotel desk attendant's testimony, and Holmes's cell phone and internet records. Holmes did not testify in his own defense. As stated above, we view all evidence presented at trial in the light most favorable to the judgment, and we do not challenge the weight and credibility attributed to witnesses by the jury. *See Kimberley*, 103 S.W.3d at 857.

The evidence presented at trial also established that Holmes *knowingly accepted* sexual intercourse from C.C. in exchange for his official discretion not to arrest her for prostitution.[2]

---

[1] Although Holmes now argues that his statement to C.C. upon entering her hotel room was a request that she agree to act as a confidential informant, the jury was not required to adopt this interpretation of Holmes's remark, but could instead reasonably interpret it as a request for sex. Holmes's suggestion that he was interested in cultivating an informant is belied by the fact that he was not authorized to engage in such activities, did not file the reports required for such activities, and never followed up with C.C., although he told the front desk clerk that he would do so when he left the hotel.

[2] Pursuant to Section 562.016.3, a person acts "knowingly" when he "is aware of the nature of his conduct or that [the attendant] circumstances exist," or when he "is aware that his conduct is practically certain to cause" a given result. Knowledge and intent may be proven by reasonable inference, and, in fact, usually are proven by such means. *See State v. Burrell*, 160 S.W.3d 798, 802 (Mo. banc 2005) ("The State may prove a defendant's knowledge by direct evidence and reasonable inferences drawn from the circumstances surrounding the incident.").

6

After specifically discussing the services of C.C. and making arrangements for them to meet, C.C.'s testimony was that Holmes did not seek to stop or prevent their sexual encounter: he stripped off his pants and duty belt to facilitate intercourse and willingly placed his penis in her mouth and vagina. The evidence also established that Holmes threatened C.C. with arrest, yet later discussed payment with her (payment for what service or purpose, Holmes does not say) and did not arrest her after the sexual acts which constituted the benefit. Based on C.C.'s testimony describing these acts, a reasonable juror could have found that Holmes knowingly accepted sexual benefits in exchange for reversing his previously-announced intention to arrest her. C.C.'s testimony regarding Holmes's actions was uncontroverted at trial and as fact-finder, the jury was free to believe her version of the events described.[3]

Simply put, the evidence presented at trial was clearly sufficient to establish that Holmes both solicited *and* knowingly accepted sex from C.C. in exchange for his official discretion to not arrest her for prostitution. The testimony of C.C. and others demonstrated that Holmes called and made an appointment for sex with C.C., who he knew in advance to be a prostitute; he arrived at her room in the partial guise of a police officer and immediately threatened her with arrest; he tried to place her in handcuffs; he told her that she would be arrested unless she gave him what he wanted; he said he did not have any money to pay her; and then he did not actually arrest her after she had sex with him. The State met its burden of proving that Holmes committed the crime of acceding to corruption beyond a reasonable doubt whether his offense is viewed as "soliciting" or "knowingly accepting" sexual benefits from C.C. Holmes's first point on appeal is denied.

---

[3] Though Holmes now maintains that C.C. might have offered him these benefits for some reason other than fear of arrest, there was no testimony at trial that would lead a reasonable juror to believe this alternative version of the sexual encounter between Holmes and C.C.

## 2. Variance Between Indictment & Verdict Director

In his second point on appeal, Holmes contends that the trial court plainly erred in issuing Instruction 5 (the verdict director for acceding to corruption regarding C.C.) in that the indictment charged that Holmes committed the crime of acceding to corruption by "knowingly accepting" sexual benefits in exchange for his official discretion not to arrest C.C., but Instruction 5 stated that he "solicited" sexual benefits in exchange for his official discretion. Holmes argues that this change in language constituted an impermissible variance between the indictment and the verdict director. We disagree.

Holmes did not object to any alleged variance at trial; therefore, we review this claim for plain error only. *See State v. Bradshaw*, 411 S.W.3d 399, 403 (Mo. App. S.D. 2013) (defendant failed to object to alleged variance at trial; thus, plain error review was only type available on appeal). Plain error review is discretionary and involves two steps: first, we must determine whether the trial court committed "evident, obvious, and clear error affecting the defendant's substantial rights"; second, if plain error is found, we then consider whether the error actually resulted in manifest injustice or a miscarriage of justice. *Id.* (internal citations omitted). "Plain error can only serve as the basis for granting a new trial if the error was outcome determinative." *State v. White*, 466 S.W.3d 682, 686 (Mo. App. E.D. 2015) (internal citation omitted). The defendant bears the burden of showing that an alleged error has produced such a manifest injustice. *State v. Isa,* 850 S.W.2d 876, 884 (Mo. banc 1993). An alleged variance between the crime charged in an indictment versus the crime submitted to the jury "is prejudicial only if it affects the appellant's ability adequately to defend against the charges presented in the [indictment] and given to the jury in the instructions." *State v. Lee*, 841 S.W.2d 648, 650 (Mo. banc 1992).

8

Here, Holmes was charged in the indictment with acceding to corruption under Section 576.020.1, which lists both "knowingly accepting" and "soliciting" benefits as means of committing the crime. Although Holmes's appellate briefing argues that he was prejudiced by the alleged variance between the indictment and the verdict director, our review of the record indicates that Holmes's principal defense was to attack C.C.'s credibility, and to suggest that she and the other complaining witness had ulterior motives to accuse Holmes, and had coordinated their stories. It is also significant that Holmes's solicitation of sexual benefits from C.C., and his knowing acceptance of them, occurred as part of a single incident to which C.C. testified. Moreover, Holmes's solicitation and knowing acceptance of sexual favors were bound together: the fact that Holmes had demanded sex of C.C. at the beginning of their encounter was critical to establishing that he knowingly accepted sex in exchange for not arresting her. Thus, Holmes cannot show plain error resulting from an alleged variance.

Furthermore, we do not find that the variance now asserted by Holmes resulted in plain error where his own trial counsel used the same language in other verdict directors. Though Holmes objects to use of the word "solicited" in Instruction 5, his own counsel submitted Instruction 6 using the same word rather than the "knowingly accepted" language he now claims was appropriate. As our Supreme Court has explained, "a defendant cannot complain about an instruction given at his request," and "a defendant may not take advantage of self-invited error of his own making." *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012). Holmes cannot demonstrate plain error where his own counsel used the same terms he now objects to, and his second point is therefore denied.

**Conclusion**

9

Although Holmes contends both that the evidence was insufficient to support his conviction, and that there was an impermissible variance between his indictment and the verdict director, we do not find that the evidence before us supports either of his contentions. For the foregoing reasons, we affirm the trial court's judgment.

Anthony Rex Gabbert, Judge

All concur.

10