STATE of Missouri, Respondent,

v.

Kevin M. IRVIN, Appellant.

No. WD 52336.

Missouri Court of Appeals,
Western District.

May 13, 1997.

Jeannie Arterburn Willibey, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Blegen, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and BERREY and EDWIN H. SMITH, JJ.

LOWENSTEIN, Presiding Judge.

This case is here, after transfer to the Supreme Court, and subsequent retransfer.

Appellant, Kevin Irvin, was charged with one count of first degree robbery and one count of armed criminal action and was also charged and sentenced as a prior and persistent offender. He does not contest the sufficiency of the evidence.

In the early morning hours of Tuesday, May 3, 1994, the victim, Gregory Ruff, the kitchen manager of Nichols Lunch, arrived at work to open Nichols Lunch for business. Ruff was working in the kitchen preparing for the upcoming business day, when there was a knock at the door. Ruff unlocked, opened the door and saw Irvin, a cook at Nichols Lunch. After being questioned, Irvin indicated he was there to work for another individual—Irvin was not on the schedule for that day. Since this was not an unusual practice, Ruff allowed Irvin to enter Nichols Lunch and relocked the door, leaving his keys in the key lock for easy access.

Ruff continued to prepare for the day's business when the defendant asked him to make a pot of coffee. Ruff agreed and left the kitchen for the waitress area in the front of the restaurant, and made coffee. Upon returning to the kitchen, Ruff was struck on the back of the head with a heavy object. Ruff headed for the back door to leave the restaurant; however, he was unable to get the door open and get away from Irvin. Irvin said, "I guess I'm going to have to kill you now," and the following fight ensued: There was a knife lying on a nearby table and both men lunged for it. Irvin grabbed the knife and stabbed Ruff in the chest. Ruff pushed him away and ran toward the front of the restaurant to call police and Irvin followed, continuing to stab him. Ruff reached the waitress counter area and a glass object hit him up-side the head. Ruff reached the local phone which was out of order, and he proceeded to the pay phone and dialed 911. Irvin left Ruff in the front of the building and went to the rear.

When police arrived, Ruff, bleeding and unable to open the door, was in the breezeway area of the front door. There was no one else in the restaurant. There was evidence of a struggle throughout the building and there was blood all over the counter, phones, floor, etc. The office area was in total disarray, $280 cash was missing from a locked file cabinet and there was blood on the cabinet. Drops of blood were also found on the rear door where Ruff originally allowed Irvin to enter. Police discovered Irvin's coat containing a pay check stub and gloves in the kitchen area. In addition to the cash, Ruff's keys were missing from the back door.

Irvin was arrested on May 17 at a house where Irvin was believed to be staying. A woman who lived in the house told police she didn't know Irvin; however, she told police another man lived in the house and maybe he knew him. After questioning this man, police proceeded to leave and noticed a pile of clothes in the closet that were covered with an afghan which appeared to be "breathing." Police found Irvin under the pile of clothes.

At the close of all evidence, Irvin was found guilty of both charges and the trial court sentenced Irvin to two concurrent fifteen year terms of imprisonment. During the pronouncement of sentence, the trial court judge **did not** mention the prior and persistent offender status; however, immediately prior to sentencing, he did question Irvin as to his knowledge of being charged as a prior and persistent offender. This appeal followed:

### POINTS RELIED ON

■■■ Appellant's first point contends that the trial court erred in entering a written judgment that materially differed from its oral pronouncement of sentence, and cites *McCaine v. State*, 891 S.W.2d 419, 420—421 (Mo.App.1994) as its basis. The written sentence and judgment of the trial court should reflect the oral pronouncement of sentence; however, if the oral pronouncement contains a discrepancy, the trial court can correct the

discrepancy before it is reduced to writing only if the defendant is present. *Jones v. State,* 910 S.W.2d 300, 303 (Mo.App.1995). At the sentencing hearing, the judge sentenced Irvin to 15 years on one count of robbery, and 15 years for armed criminal action to run concurrent. There was no mention at that time that Irvin was a prior and persistent offender. There was no correction in the oral pronouncement; however, the written judgment stated that Irvin was being sentenced as a prior and persistent offender.

After this court's opinion was handed down, the Supreme Court handed down *Johnson v. State,* 938 S.W.2d 264, 266 (Mo. banc 1997), where the court said:

> Even if the record did not clearly reveal the oral sentence, Mr. Johnson would not be entitled to relief because the trial judge had no discretion to determine whether Mr. Johnson should serve his sentence as a persistent offender. The statutory language is clear and it is mandatory. It provides that, once the court finds facts beyond a reasonable doubt showing that a defendant has been found guilty of two prior felonies, it "shall find the defendant to be a . . . persistent offender. . . ." Once the defendant is found to be a persistent offender, the enhancement provision is automatic: "If the defendant is a persistent offender, the minimum prison term which the defendant shall serve shall be sixty percent of his sentence." As described above, the court explicitly made the required factual findings and the finding that Mr. Johnson was a persistent offender. Short of revoking these findings, the court could not have sentenced him as anything other than a persistent offender. Since the statute gave the sentencing court no discretion to decide what proportion of his sentence Mr. Johnson was required to serve, the fact that the court did not mention it during the formal pronouncement of sentence is irrelevant. Under this statute, the finding that a defendant is a repeat offender need not be restated during the oral pronouncement of sentence. To the extent that it holds otherwise, *McCaine* is overruled. (Footnotes omitted)

On the basis of *Johnson,* the point is denied.

■ Appellant's second point claims the trial court abused its discretion in overruling his objection and permitting the state to enter into evidence items which would have a highly prejudicial effect on the jury (Ruff's bloody clothes). Irvin claims Ruff's torn and bloody clothes would impact negatively on any jury because they were highly prejudicial and misleading.

The court enjoys wide discretion when ruling as to the relevancy of evidence, and its decision will be reversed only upon finding that it has clearly abused its discretion. *State v. Parkhurst,* 845 S.W.2d 31, 36 (Mo. banc 1992). "The test for relevancy is whether the proffered evidence would logically prove or disprove a fact in issue." Irvin was charged with first degree robbery, § 569.020, RSMo 1994, which states:

> A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,
>
> 1) Causes serious physical injury to any person; or
>
> 2) Is armed with a deadly weapon; or
>
> 3) Uses or threatens the immediate use of a dangerous instrument against any person; or . . .

Ruff's bloody clothes were placed into evidence to show the seriousness of Ruff's injuries, and shed light on the fact that this was first degree robbery and included the use of a weapon. The clothing, in addition to Ruff's testimony, demonstrated that the injuries were sustained by Ruff when Irvin used the dangerous weapon; therefore, the evidence is not considered prejudicial and misleading. It is also the opinion of this court that the evidence entered did not deprive Irvin of a fair trial. Point II denied.

■ Irvin's third and final point claims the trial court erred in failing to *sua sponte* declare a mistrial because the prosecuting attorney argued in closing argument that defense counsel acted improperly in the cross-examination of the victim. Irvin's defense counsel did not object to the argument and asks this court for plain error review.

Rule 30.20. In order to be considered for plain error to exist, the alleged error must so substantially effect the rights of the accused that a miscarriage of justice results. Closing arguments seldom result in plain error which necessitate reversal, and trial strategy looms as an important consideration. *State v. Martin,* 852 S.W.2d 844, 853 (Mo.App.1992); *State v. Wood,* 719 S.W.2d 756 (Mo. Banc 1986). This court does not believe that the remarks made during closing argument substantially affect the rights of Irvin, and do not result in a miscarriage of justice.

Point III is denied.

The judgment is affirmed.

All concur.