

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD78753 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | October 11, 2016 |
| JASON L. BERRY, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Kevin D. Harrell, Judge**

**Before Division IV:** Mark D. Pfeiffer, Chief Judge, and
James Edward Welsh and Alok Ahuja, Judges

Mr. Jason Berry ("Berry") appeals from his convictions for the class B felony of burglary

in the first degree, § 569.160;[1] the unclassified felony of rape in the first degree, § 566.030; and

the class B felony of sexual abuse in the first degree, § 566.100, following a jury trial in the Circuit

Court of Jackson County, Missouri ("trial court"). Berry claims the trial court plainly erred in

instructing the jury and in sentencing. We affirm Berry's convictions, vacate his sentence on

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by Cumulative Supplement
2013.

Count IV (first-degree sexual abuse), and remand with directions to resentence Berry consistent with today's ruling as to Count IV only.

## Factual and Procedural Background[2]

Berry was living with his girlfriend and their children in a house about 200 feet from E.W.'s[3] home in Kansas City, Missouri. On the morning of May 23, 2014, when Berry's girlfriend left to take their son to school at 8:00 a.m., Berry was home asleep. When she got back home at 9:25 a.m., Berry was gone, and the back door was unlocked, which was unusual because she kept the doors locked. Berry returned about 9:45 a.m.

That same morning, E.W. returned home after taking care of her elderly mother. She was sitting down to eat her breakfast when she heard someone fiddling with the lock on the front door. She went to the door and asked the person what he wanted. The man, whom E.W. identified as Berry, opened the door and entered the house. E.W. again asked Berry what he wanted, and he told her, "I'll show you what I want." Berry started pulling at E.W.'s clothing. She tried pushing him and kicking him, but Berry pushed E.W. onto the couch on her back and started taking off her pants and underwear. Berry then penetrated E.W.'s vagina with his penis, touched her breast with his mouth, and choked her with his hands. Berry then told E.W. to lick his penis, and when she moved her head out of the way, he started choking her. Then, E.W. fainted.

When E.W. woke up, Berry was gone. She called the police. Officer Prough and another officer were dispatched to E.W.'s home on a report of rape. When the officers arrived, Officer Prough contacted E.W., and she told him that a man had forced his way into her home and raped her. She described the man as a black male with collar length hair and facial hair, and he referred

---

[2] "We view the facts in the light most favorable to the jury's verdict." *State v. Bax*, 459 S.W.3d 493, 494 n.1 (Mo. App. W.D. 2015).

[3] Pursuant to section 566.226, we have used initials to identify the victim so as to protect the victim's identity.

to himself as "Jason." E.W. related to Officer Prough that Berry forced his way into her living room, pushed her in, pulled off her clothes, made her insert his penis into her mouth, kissed and sucked on her breasts, choked her, and inserted his penis into her vagina. Officer Prough observed that E.W. was "highly upset" and lost consciousness multiple times while he was talking to her.

Officer Prough observed that the screen door to E.W.'s home was slit and the exterior handle appeared to be pulled away from the door frame. Berry's fingerprints were recovered from the exterior and interior sides of the storm door. E.W.'s living room was in disarray. A pair of women's white underwear was on the floor near the couch. There was a large stain on one of the couch cushions.

E.W. was taken to the hospital. An examination revealed that she had petechiae markings on the right and left side of her neck. While E.W. was at the hospital, a detective presented her with a photographic lineup, from which she identified Berry as her assailant.

Officer Prough had additional officers canvass the area to see if they could find a male matching the description given by E.W. Berry was interviewed by police and claimed that he was home all day and had not left the house. Later, he said he left the house the night before at 6:00 p.m. to take his uncle to work.

The Kansas City police crime laboratory analyzed evidence that had been collected during the investigation of the case. E.W.'s vaginal, oral, and external genitalia were all positive for a protein indicative of the presence of semen. Tests run on E.W.'s right breast swab indicated the presence of saliva. DNA testing on the right breast swab revealed both E.W.'s and Berry's DNA were present. The frequency of the DNA profile that matched Berry's was one in forty-five quintillion unrelated individuals. Testing of E.W.'s vaginal swab identified Berry's DNA profile.

The State charged Berry by indictment with one count of the class B felony of burglary in the first degree, one count of the unclassified felony of rape in the first degree, one count of the unclassified felony of sodomy in the first degree, and one count of the class C felony of sexual abuse in the first degree. An information in lieu of indictment was subsequently filed, charging Berry as a prior and persistent offender. While Berry was in jail awaiting trial, he called his girlfriend and told her that he needed her to testify that he was with her when she took their son to school on the morning of the assault.

Berry testified at trial in his own defense and claimed that he did not rape, sodomize, or sexually abuse E.W. He stated that he was in E.W.'s house in 2012 but not on the day she was assaulted.

The jury found Berry guilty of burglary in the first degree, rape in the first degree, and sexual abuse in the first degree, and not guilty of sodomy in the first degree. The trial court, having previously found Berry was a prior and persistent offender, subsequently sentenced him to thirty years' imprisonment on the burglary charge, seventy years' imprisonment on the rape charge, and fifteen years' imprisonment on the sexual abuse charge, to be served consecutively.

Berry timely appealed.

**Analysis**

**Point I – Instructional Error**

In Berry's first point, he asserts that the trial court plainly erred in submitting the verdict director for sexual abuse (Instruction No. 17) to the jury because it failed to require the jury to find an essential element of the crime: that E.W. was a woman.

The State proffered the verdict director for sexual abuse, and Berry's trial counsel stated that he had no objection to the instruction. Berry concedes that his allegation of error is not

4

preserved for appellate review. *See* Rule 29.03 ("Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."). *See also State v. Vaughn*, 11 S.W.3d 98, 105 (Mo. App. W.D. 2000) ("The failure to object to an instruction constitutes a waiver of that error."). Nevertheless, Berry requests that we review his claim of instructional error for plain error. Although Berry waived appellate review when his trial counsel affirmatively stated that he had no objection to Instruction No. 17, unpreserved claims of plain error relating to jury instructions may still be reviewed under Rule 30.20[4] if manifest injustice would otherwise occur. *See State v. Wurtzberger*, 40 S.W.3d 893, 898 (Mo. banc 2001). *See also State v. Manuel*, 443 S.W.3d 669, 672 (Mo. App. W.D. 2014) (citing *Wurtzberger* and holding that neither a failure to object to an instruction, nor an express statement of "no objection" to an instruction, waive plain error review).

"Plain error review is discretionary and involves two steps: first, we must determine whether the trial court committed evident, obvious, and clear error affecting the defendant's substantial rights; second, if plain error is found, we then consider whether the error actually resulted in manifest injustice or a miscarriage of justice." *State v. Holmes*, 491 S.W.3d 214, 219 (Mo. App. W.D. 2016) (internal quotation omitted). "When the unpreserved allegation concerns instructional error, plain error exists when it is clear that the circuit court has so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted." *State v. Zetina-Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016). "The defendant bears the burden of

---

[4] Under Rule 30.20, "plain errors affecting substantial rights may be considered in the discretion of the [appellate] court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

5

showing that an alleged error has produced such a manifest injustice." *Holmes*, 491 S.W.3d at 219. "Instructional error seldom rises to the level of plain error." *Manuel*, 443 S.W.3d at 672.

Berry contends that the verdict directing instruction conflicts with the substantive law because it failed to require the jury to find one of the essential elements of the crime. "A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged." *Zetina-Torres*, 482 S.W.3d at 811 (internal quotation omitted). "A violation of due process arises when an instruction relieves the State of its burden of proving each and every element of the crime and allows the State to obtain a conviction without the jury deliberating on and determining any contested elements of that crime." *Id*. (internal quotation omitted). "Plain error exists when an instruction omits an essential element and the evidence establishing the omitted element was seriously disputed." *Id.* (internal quotation omitted).[5]

The State charged Berry with committing first-degree sexual abuse by "knowingly subject[ing] E.W. to sexual contact when he kissed the breast of E.W. by the use of forcible compulsion." Section 566.100.1 provides in pertinent part: "A person commits the offense of sexual abuse in the first degree if he or she subjects another person to sexual contact . . . by the use of forcible compulsion." The statutory definition of "sexual contact" in section 566.010(3)

---

[5] Berry argues that the "seriously disputed" standard for reviewing a claim that an element was omitted from a jury instruction is untenable under *State v. Jackson*, 433 S.W.3d 390, 406 (Mo. banc 2014) and *State v. Pierce*, 433 S.W.3d 424, 432 (Mo. banc 2014). In both *Jackson* and *Pierce*, however, the claims of instructional error had been preserved at trial. The Supreme Court's later decision in *Zetina-Torres* involved a case—like this one—in which the claim of instructional error was being reviewed for plain error. We cannot accede to Berry's request to alter our standard of review. "[T]he Court of Appeals is constitutionally bound to follow the most recent controlling decision of the Supreme Court of Missouri." *State v. Brightman*, 388 S.W.3d 192, 199 (Mo. App. W.D. 2012) (internal quotation omitted). Berry concedes that if we "find the beyond-serious-dispute standard still applies to plain error claims alleging a criminal instruction omitted an essential element of the offense, . . . he cannot meet that standard with this claim."

6

provides for various methods of commission of the crime by touching another person, including touching "the breast of a female person."

The pattern instruction for submitting the crime of sexual abuse under section 566.100 is MAI-CR 3d 320.27 [9-1-03]. Paragraph First of the pattern instruction submits the elements of "sexual contact," including the option labeled [1]: "touched the (genitals) (or) (anus) (or) (breast) of [*name of victim*]." "Whenever there is an MAI-CR instruction or verdict form applicable under the law and Notes On Use, the MAI-CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." Rule 28.02(c). The verdict form submitted to the jury complied with the pattern instruction and the evidence establishing the allegedly "omitted element" of E.W.'s sex was not seriously disputed. E.W. testified at trial, so the jury was able to observe her gender. The forensic nurse examiner who performed the sexual assault examination on E.W. described her examination of E.W.'s external female genitalia and testified that she did not perform a cervical examination because E.W. had had a hysterectomy.

Under these circumstances, we conclude that "the circuit court has [not] so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted." *Holmes*, 491 S.W.3d at 219, and Berry's claim of plain error fails.

Point I is denied.

### Points II, III, IV, and V – Sentencing Error on Sexual Abuse Count

In Berry's second, third, fourth, and fifth points, he contends that the trial court plainly erred by granting the State's motion to correct the sentence on the first-degree sexual abuse charge (Count IV) by order *nunc pro tunc* and resentencing him to fifteen years.[6] Berry argues that the

---

[6] Berry's Points III through V elaborate on the errors raised in Point II regarding trial court error in sentencing Berry on the sexual abuse count, and he requests the same relief in Points III through V as he requests in Point II. Because we find Point II dispositive as to resentencing, we do not directly address Points III through V.

imposition of the new sentence was in violation of his constitutional due process rights, sections 546.550[7] and 546.560,[8] and Rule 29.07(b)(2)[9] because he was not personally present for resentencing.

Berry concedes that defense counsel did not object to the trial court's initial sentencing on Count IV to thirty years' imprisonment or to the trial court's granting the State's motion to correct the sentence imposed on Count IV *nunc pro tunc* and resentencing Berry to fifteen years' imprisonment. Berry concedes that there was no objection by his trial counsel at sentencing or to resentencing. He requests that we review for plain error pursuant to Rule 30.20. According to Rule 30.20, this court may in its discretion consider plain errors affecting substantial rights if it finds that manifest injustice or a miscarriage of justice has resulted therefrom. "We employ a two-step process in determining whether relief should be granted under the plain error standard." *State v. Washington*, 249 S.W.3d 255, 257 (Mo. App. W.D. 2008). "First we determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted." *Id.* If we find plain error, then we can, in our discretion, consider whether a miscarriage of justice or manifest injustice will occur if the error is not corrected. *Id.* "An appellant must go beyond a mere showing of prejudice to show manifest prejudice affecting his substantial rights." *Id.*

The jury found Berry guilty of first-degree burglary, first-degree rape, and first-degree sexual abuse, but acquitted him of first-degree sodomy. The trial court found Berry to be a prior and persistent offender. Subsequently, at the sentencing hearing, the State asked the trial court to

---

[7] "For the purpose of judgment, if the conviction be for an offense punishable by imprisonment, or imprisonment be assessed as punishment by the jury, the defendant must be personally present . . . ." § 546.550.

[8] "If the defendant is in custody, he must be brought before the court for judgment . . . ." § 546.560.

[9] "If the defendant has been convicted of a felony, he must be personally present when sentence and judgment are pronounced." Rule 29.07(b)(2).

8

sentence Berry to seventy years' imprisonment on the sexual abuse count. The prosecutor informed the trial court that the sexual abuse count was an ungraded felony. Berry's counsel asked for seven years' imprisonment on the sexual abuse count. The trial court *orally* pronounced sentence: thirty years on the burglary count, seventy years on the rape count, and *thirty* years on the sexual abuse count, all sentences to run consecutively. On the same day as the sentencing hearing, June 18, 2015, the trial court issued its *written* judgment, sentencing Berry to thirty years on first-degree burglary, seventy years on first-degree rape, and *fifteen* years on first-degree sexual abuse, all sentences to run consecutively.

The next day, June 19, 2015, the State filed its motion to correct sentence in Count IV *nunc pro tunc*. The State asserted that Count IV (first-degree sexual abuse) was a class C felony with a range of punishment of one to seven years; that as a prior and persistent offender Berry was subject to fifteen years—the maximum term of imprisonment for a class B felony; and that Berry's sentence of thirty years was thus in excess of the maximum allowed by law. The State requested that the trial court resentence Berry to fifteen years' imprisonment. On June 22, 2015, the trial court entered a *nunc pro tunc* order granting the State's motion.

*Nunc pro tunc* orders are allowed under Rule 29.12(c), which provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time after such notice, if any, as the court orders." "A nunc pro tunc order may be used only to correct clerical errors in entering a rendered judgment, it may not be used to alter or amend the rendered judgment." *State v. Bibb*, 922 S.W.2d 798, 803 (Mo. App. E.D. 1996). "When a judicial mistake is made in the rendering of a judgment, the error cannot be corrected nunc pro tunc." *Id*.

The State concedes that the trial court erred in entering a new sentence, *nunc pro tunc*, on Berry's conviction for first-degree sexual abuse because the trial court did not use the proper due process procedures to correct the erroneous oral sentence it initially imposed on the sexual abuse charge. The trial court *orally* pronounced a thirty-year sentence on the first-degree sexual abuse count, but the *written* judgment reflected a fifteen-year term of imprisonment. The written judgment and sentence of the trial court should reflect the *oral* pronouncement of sentence. *State v. Irvin*, 944 S.W.2d 592, 593 (Mo. App. W.D. 1997). "If there is a material difference between the court's oral pronouncement of sentence and the written judgment, the oral pronouncement of sentence controls." *State v. Harris*, 364 S.W.3d 790, 796 (Mo. App. W.D. 2012). "[I]f the oral pronouncement contains a discrepancy, the trial court can correct the discrepancy before it is reduced to writing *only if the defendant is present*." *Irvin*, 944 S.W.2d at 593-94 (emphasis added). "If the defendant is not returned for resentencing, the court has authority only to enter the sentence as orally pronounced." *State v. Burrell*, 944 S.W.2d 948, 951 (Mo. App. W.D. 1997). "[A] defendant has a due process right to be personally present at the time of sentencing and to be heard on the pronouncement." *Washington*, 249 S.W.3d at 258.

Berry was denied his due process right to be personally present at resentencing. Because there was a denial of the due process required for resentencing, we conclude that there was clear, obvious error affecting substantial rights. *See id.* The trial court plainly erred by granting the State's motion to correct the sentence on the first-degree sexual abuse charge (Count IV) by order *nunc pro tunc* and resentencing Berry to fifteen years' imprisonment. Therefore, we vacate the sentence on Count IV for first-degree sexual abuse and remand for resentencing consistent with our ruling today.

Point II is granted.

10

**Point VI – Sentencing Error on Burglary Count**

In Berry's sixth point on appeal, he asserts that the trial court plainly erred in sentencing him to thirty years' imprisonment on the first-degree burglary count because the sentence was based on the trial court's misunderstanding as to the range of punishment. Specifically, Berry claims that the trial court erroneously believed that a persistent offender finding increased both the minimum and maximum sentences to the next grade of felony.

Berry concedes that his trial counsel did not object to the trial court imposing thirty years' imprisonment at sentencing or to the trial court granting the State's motion to correct sentence in Count IV *nunc pro tunc* and resentencing him to fifteen years' imprisonment. He again requests that we review for plain error pursuant to Rule 30.20. We decline to do so for the following reasons.

The jury found Berry guilty of first-degree burglary, first-degree rape, and first-degree sexual abuse, but acquitted him of first-degree sodomy. The trial court found Berry to be a prior and persistent offender. Subsequently, at the sentencing hearing, the State asked the trial court to sentence Berry to thirty years' imprisonment on the burglary count. The prosecutor informed the trial court that the burglary count was a B felony, but the prosecutor argued that since Berry was found to be "a prior sex offender,"[10] he was subject to the A felony range of ten years to life. Berry's counsel responded to the contrary that the minimum sentence of five years was still available on the first-degree burglary count, and only the ceiling of punishment was increased. Berry's counsel then requested that the trial court sentence Berry to ten years on the burglary count. The trial court orally pronounced a sentence of thirty years on the burglary count. On the same

---

[10] The prosecutor misspoke, as Berry was charged and found by the trial court to be a prior and persistent offender, not a prior sex offender.

11

day as the sentencing hearing, June 18, 2015, the trial court issued its written judgment, which likewise sentenced Berry to thirty years' imprisonment on first-degree burglary.

Berry was found guilty of first-degree burglary, a class B felony. § 569.160. The trial court found that Berry was a prior and persistent offender. § 558.016. The total authorized maximum term of imprisonment for a persistent offender for a class B felony is any sentence authorized for a class A felony. § 558.016.7(2). The maximum authorized term of imprisonment for a class A felony is a term of years not to exceed thirty years or life imprisonment. § 558.011.1(1).

Berry relies on *State v. Cowan*, 247 S.W.3d 617 (Mo. App. W.D. 2008), to support his claim that he is entitled to resentencing because the trial court based his sentence on a materially false foundation as to the range of punishment. We find *Cowan* is distinguishable. In *Cowan*, the trial court held a hearing on Cowan's motion to set aside his guilty plea. The *trial court* (i.e., not the prosecutor) explained that setting aside the guilty plea and trying the case would result in charging Cowan as a prior and persistent offender, which would increase the range of punishment for the B felony of first-degree burglary to an A felony, subjecting him to a sentencing range of *ten* (even though the minimum sentence for a B felony was five years) to thirty years or life imprisonment. *Id.* at 618. Thereafter, a jury found Cowan guilty of the burglary charge. *Id.* The trial court sentenced Cowan to ten years' imprisonment for burglary, based on the *trial court's* misinterpretation of the minimum range of punishment it had expressed at the earlier hearing on the motion to set aside the guilty plea. *Id.* Cowan appealed his sentence. *Id.* The allegation of sentencing error was reviewed by this court *de novo* as an issue of statutory construction of section 558.016. *Id.* at 619. We concluded that Cowan's range of punishment, as a prior and

persistent offender, should have been *five* (not ten) to thirty years or life imprisonment, and the *trial court's* interpretation of the statute constituted reversible error. *Id.*

Here, defense counsel corrected the *prosecutor's* misstatement as to the minimum authorized term of imprisonment during the sentencing hearing. The prosecutor did not challenge or object to defense counsel's correction and there is nothing in the record indicating that the *trial court* misunderstood the range of punishment on the burglary count when it pronounced sentence. Also, we note that the trial court did not sentence Berry to a minimum term of imprisonment under any evaluation of B felony or A felony sentencing ranges.[11]

Berry was lawfully sentenced upon conviction as a prior and persistent offender for first-degree burglary. The trial court did not err, plainly or otherwise, in sentencing Berry to thirty years' imprisonment, which is within the statutorily-authorized maximum term of imprisonment for a class A felony.

Point VI is denied.

### Conclusion

Berry's sentence on Count IV (first-degree sexual abuse) is vacated, and the cause is remanded to the trial court for resentencing consistent with today's ruling as to Count IV only. In all other respects, the trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Chief Judge

James Edward Welsh and Alok Ahuja, Judges, concur.

---

[11] Berry also argues that the trial court's grant of the State's motion to correct Berry's sentence on the first-degree sexual abuse charge (Count IV) by order *nunc pro tunc* and resentencing him to fifteen years demonstrates that the trial court misunderstood the effect of the prior and persistent offender finding on the range of punishment for the first-degree burglary charge. This speculative assertion is wholly without support in the record.

13