

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | **WD82502** |
| v. | ) | |
| | ) | |
| | ) | **OPINION FILED:** |
| | ) | **March 31, 2020** |
| SCOTT EVAN WEYANT, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Adair County, Missouri
The Honorable Russell E. Steele, Judge**

**Before Division One:**  Thomas N. Chapman, Presiding Judge, and
Mark D. Pfeiffer and Anthony Rex Gabbert, Judges

Mr. Scott E. Weyant ("Weyant") appeals from the judgment of the Circuit Court of Adair

County, Missouri ("trial court"), finding him guilty, following a jury trial, of sodomy in the first

degree.  On appeal, Weyant argues that the trial court plainly erred in submitting the instruction

defining "deviate sexual intercourse" because he claims it impermissibly submitted a disjunctive

phrase in violation of MAI-CR 420.12.  Because this is a "single act" case, Weyant's reliance upon

*State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), is misplaced and, in light of the fact that

substantial evidence in the case supported the disjunctive submission of alternative purposes for

the crime, the trial court did not err, plainly or otherwise, in instructing the jury as to the definition of "deviate sexual intercourse." We affirm.

## Facts and Procedural History[1]

Although C.W.[2] was divorced from Weyant, they shared an apartment, with C.W. sleeping in the bedroom and Weyant sleeping on the couch. On April 6, 2017, C.W. was moving her possessions to a new apartment. That evening, when she returned to the apartment to retrieve more of her possessions, she found an intoxicated Weyant lying on her bed, and he became angry when C.W. refused his sexual entreaties. When C.W. asked Weyant to get out of her bedroom, he threw beers at her; then, he grabbed her by the neck, threw her on the bed, and got on top of her. C.W. thought Weyant was going to choke her. Instead, he held her down and dumped beer on her face. As C.W. was crawling away from Weyant, he pushed her on the floor.

When C.W. was crawling to the other side of the room, Weyant grabbed her from behind and stuck his hand down her pants, pushing his middle and pointer fingers in and out of her vagina very aggressively. C.W. pleaded with Weyant to stop, but Weyant ignored her. When C.W. was able to roll over onto her back, she succeeded in physically defending herself, and Weyant pulled his hands out of her pants.

C.W. ran into the living room to get her purse and leave, but Weyant grabbed her purse and ran back into her bedroom. He held the purse above her head and said, "Don't leave. Don't leave." When C.W. convinced Weyant to give her purse to her, she ran outside to her vehicle but could not find her keys. She went back to the apartment, and Weyant opened the door but he

---

[1] "On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Demark*, 581 S.W.3d 69, 73 n.2 (Mo. App. W.D. 2019) (internal quotation marks omitted).

[2] Pursuant to section 595.226.1, RSMo 2016, we have used initials to identify the victim so as to protect the victim's identity.

would not initially let her have her keys. Eventually, C.W. retrieved her keys, ran outside, and drove straight to the Kirksville police station.

At the police station, Officer Nicholas Panos interviewed C.W., and observed that she was upset, she had been crying, her face was red, and her shirt was wet and had the odor of intoxicants on it.

While Officer Panos was interviewing C.W., Officer Jake Roberts went to the apartment to speak to Weyant. When Officer Roberts made contact with Weyant, he observed that Weyant was visibly intoxicated. Weyant's speech was slurred, and the officer could detect intoxicants on his breath. Weyant admitted to having a verbal altercation with C.W. Officer Roberts took Weyant into custody.

The State charged Weyant as a prior offender with one count of sodomy in the first degree for knowingly having deviate sexual intercourse with C.W. by the use of forcible compulsion on April 6, 2017. A jury trial was conducted on November 28-29, 2018. At the instruction conference, defense counsel affirmatively stated that the defendant had no objections to the instructions tendered by the State.[3] The jury found Weyant guilty of sodomy in the first degree, as submitted in Instruction No. 5. The jury was polled, and the trial court found that the verdict returned was the unanimous verdict of the jury.

---

[3] Yet, a few weeks after trial, the same trial counsel who affirmatively announced to the trial court that trial counsel had no objection to the jury instructions, subsequently filed a motion for new trial asserting instructional error pursuant to *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011). Since trial counsel was aware of *Celis-Garcia*, we question why trial counsel waited to object to the subject jury instructions until *after* her client was convicted. Some might suggest that this was an effort to "sandbag" the State and trial court by holding the "instructional error card" in trial counsel's "strategy pocket" until after the trial. While we have no way of knowing trial counsel's motivation in choosing to affirmatively assent to the giving of the presently complained-of jury instruction at trial, only to object to the same instruction shortly *after* trial, we caution all future trial counsel who may see *Celis-Garcia* as just such an opportunity to engage in instructional-error sandbagging; it is not. Instead, we point to the better practice of defense trial counsel in *State v. Holmsley*, 554 S.W.3d 406 (Mo. banc 2018), as more fully described in our ruling today.

3

In Weyant's motion for new trial, he asserted for the first time that the trial court erred in submitting a disjunctive definitional instruction and that it was thus impossible to determine if the jury reached a unanimous verdict, citing to *State v. Celis-Garcia*. The trial court overruled the motion and sentenced Weyant to the Department of Corrections for a term of twelve years.

Weyant timely appealed.

## Standard of Review

At the instruction conference, the State proffered a verdict-directing instruction for sodomy in the first degree and an instruction defining "deviate sexual intercourse." Weyant's trial counsel affirmatively stated that the defendant had no objection to the instructions. Weyant thus concedes that his allegation of error is not preserved for appellate review. *See* Rule 29.03 ("Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.").

Nevertheless, Weyant requests that we review his claim of instructional error for plain error. "Although [Weyant] waived appellate review when his trial counsel affirmatively stated that he had no objection to [the State's instructions], unpreserved claims of plain error relating to jury instructions may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur." *State v. Berry*, 506 S.W.3d 357, 361-62 (Mo. App. W.D. 2016) (footnote omitted) (citing *State v. Wurtzberger*, 40 S.W.3d 893, 898 (Mo. banc 2001)). *See also State v. Manuel*, 443 S.W.3d 669, 672 (Mo. App. W.D. 2014) (citing *Wurtzberger* and holding that neither a failure to object to an instruction, nor an express statement of "no objection" to an instruction, waive plain error review).

4

Rule 30.20[4] provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "Plain error review is discretionary and involves two steps: first, we must determine whether the trial court committed evident, obvious, and clear error affecting the defendant's substantial rights; second, if plain error is found, we then consider whether the error actually resulted in manifest injustice or a miscarriage of justice." *Berry*, 506 S.W.3d at 362 (internal quotation marks omitted). "'When the unpreserved allegation concerns instructional error, plain error exists when it is clear that the circuit court has so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted.'" *Id*. (quoting *State v. Zetina-Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016)). "The defendant bears the burden of showing that an alleged error has produced such a manifest injustice." *Id*. (internal quotation marks omitted). "Instructional error seldom rises to the level of plain error." *Id. (*internal quotation marks omitted).

### Analysis

In Weyant's sole point on appeal, he asserts that the trial court plainly erred in submitting Instruction 7, the definition for deviate sexual intercourse, because it instructed the jury that they could find the act was done for the purpose of either arousing or gratifying the sexual desire of any person *or* terrorizing another. However, Weyant does *not* contest on appeal that there was substantial evidence at trial of *both* "purposes" for the *single* act of unlawful digital penetration he was charged and convicted of. Hence, because the jurors at Weyant's trial necessarily reached a unanimous decision on guilt or innocence, namely, that Weyant "knowingly" had "deviate sexual

[4] All rule references are to I MISSOURI COURT RULES—STATE 2019.

intercourse" with C.W. on April 6, 2017, by the use of "forcible compulsion," it did not impact jury unanimity to provide the jury an instruction in the disjunctive as to the *purpose* for his crime.

"A person commits the offense of sodomy in the first degree if he or she has deviate sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion." § 566.060.1.[5] By amended felony information, the State charged Weyant as a prior offender with committing the felony of sodomy in the first degree in violation of section 566.060 in that on April 6, 2017, he "knowingly had deviate sexual intercourse with [C.W.] by the use of forcible compulsion."

The approved instruction for sodomy in the first degree is MAI-CR 4th 420.12 (7-1-17).[6] Instruction No. 5 was the verdict director for sodomy in the first degree that was tendered by the State, submitted to the jury at Weyant's trial, *and of which Weyant does not complain of on appeal*:

> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about April 6, 2017, in the State of Missouri, the defendant knowingly had deviate sexual intercourse with [C.W.] by forcing his finger into [C.W.'s] vagina, and
>
> Second, that defendant did so by the use of forcible compulsion, then you will find the defendant guilty of sodomy in the first degree. However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
>
> As used in this instruction, "forcible compulsion" means physical force that overcomes reasonable resistance or a threat, express or implied, that places a person in reasonable fear of death or serious physical injury or kidnapping of herself or another person.

At the time Weyant committed the alleged offense, "deviate sexual intercourse" was statutorily defined as:

---

[5] All statutory references are to the REVISED STATUTES OF MISSOURI 2016.

[6] "This instruction applies to offenses committed on or after January 1, 2017." MAI-CR 4th 420.12 (7-1-17), Notes on Use 1. The State charged that Weyant committed the offense on April 6, 2017.

6

[A]ny act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done *for the purpose of arousing or gratifying the sexual desire of any person **or** for the purpose of terrorizing the victim[.]*

§ 566.010(3) (emphasis added). Likewise, sexual gratification *or* terrorizing the victim are both listed as optional choices in the MAI-CR 420.12 definition of "deviate sexual intercourse":

As used in this instruction, the term "deviate sexual intercourse" means (any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person) (or) (a sexual act involving the penetration, however slight, of the penis, female genitalia, or the anus by a finger, instrument or object) done for the purpose of (arousing or gratifying the sexual desire of any person) (terrorizing [*Identify victim.*]).

There is nothing in MAI-CR 420.12 or the associated Notes on Use mandating that the State must elect either that the act was done for one purpose or another; rather, the only requirement is that the act (in this case, digital penetration) "must be consistent with the language selected in the definition of deviate sexual intercourse." *See Notes on Use 2.*[7] In other words, the instruction "must be supported by substantial evidence and the reasonable inferences to be drawn therefrom." *State v. Avery*, 275 S.W.3d 231, 233 (Mo. banc 2009); *see also State v. Demark*, 581 S.W.3d 69, 77-78 (Mo. App. W.D. 2019). Likewise, "'disjunctive submission of alternative means by which a single crime can be committed is proper . . . if the alternative submissions are each supported by the evidence.'" *State v. Wright*, 585 S.W.3d 360, 375 (Mo. App. W.D. 2019) (quoting *State v. Shockley*, 98 S.W.3d 885, 891 (Mo. App. S.D. 2003)). Here, an instruction defining "deviate sexual intercourse" was tendered by the State and submitted to the jury as Instruction No. 7:

---

[7] MAI-CR 4th 420.12 (7-1-17), Notes on Use 2 provides that:

A person commits the offense of sodomy in the first degree if he or she has deviate sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion. There are two types of acts, penetration or contact, under the definition of "deviate sexual intercourse." *Soto v. State*, 226 S.W.3d 164 (Mo. 2007). The acts constituting deviate sexual intercourse alleged in paragraph first of this instruction must be consistent with the language selected in the definition of deviate sexual intercourse.

7

As used in these instructions, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the penis, female genitalia, or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or terrorizing another.

Indeed, there was substantial evidence at trial that Weyant's purpose in committing the crime was *both* for the purpose of sexual gratification *and* terrorizing his victim. Weyant does not contest the evidentiary basis for the disjunctive submission of his purpose in committing the crime. Rather, he summarily concludes that we should treat this like a "multiple acts" case as described in *Celis-Garcia* and that we should reverse on the grounds that the disjunctive submission of the definition of deviate sexual intercourse destroyed juror unanimity as to his conviction for sodomy in the first degree. We disagree.

In *Celis-Garcia*, our Missouri Supreme Court defined a "multiple acts" case as arising "when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Celis-Garcia*, 344 S.W.3d at 155-56. Because the verdict-directing instructions in *Celis-Garcia* "permitted the jury to convict [defendant] of two counts of sodomy without identifying the acts the jurors were to agree she committed," the Supreme Court found plain error "because it was impossible to determine whether the jury unanimously agreed on any one of [the] separate incidents [of sodomy]" from the evidence presented at trial. *Id.* at 158.

*Celis-Garcia* does not apply here. This is not a "multiple acts" case; rather, the State charged Weyant and presented evidence of one act of unlawful digital penetration occurring on April 6, 2017. To find that the charged offense of sodomy in the first degree occurred, it was proper for the jury to find that Weyant's purpose in digitally penetrating his victim was for either sexual gratification or to terrorize his victim. In either instance, his conduct constituted deviate

8

sexual intercourse as defined by statute. The jury was still required to reach unanimity on all of the elements of the crime charged and as reflected in the verdict-directing instruction in this case.

> A jury need only be unanimous as to the ultimate issue of guilt or innocence, and need not be unanimous as to the means by which the crime was committed. A disjunctive submission of alternative means by which a single crime is committed is proper if both alternatives are supported by sufficient evidence and the alternative means are in the same conceptual grouping.

*State v. Richter*, 504 S.W.3d 205, 211 (Mo. App. W.D. 2016) (citation omitted) (internal quotation marks omitted). In *Richardson v. United States*, 526 U.S. 813 (1999), the Supreme Court of the United States provided an example of a permissible disjunctive instruction:

> Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

*Id.* at 817.

Though the present case is not one of different "means" for committing the crime, it is instructive that courts have found that using a knife vs. gun (*Richardson*) or shaking vs. striking a baby (*Richter*) is wholly appropriate to be submitted to the jury as long as the jury is unanimously agreeing that the related element of the crime (use of threatened force in *Richardson* or endangering the welfare of a child in *Richter*) has occurred by way of *either* of the described means.

Similarly, here, though the jury could conclude that Weyant digitally penetrated C.W.'s vagina *either* for the purpose of sexual gratification *or* to terrorize C.W., the jury was still required to unanimously agree that *the act* of digital penetration satisfied the element of "deviate sexual intercourse" necessary for conviction of the crime for which he was charged. Accordingly, the

9

trial court did not err in instructing the jury on the definition of "deviate sexual intercourse" at trial.

Though *State v. Holmsley*, 554 S.W.3d 406 (Mo. banc 2018), is relevant, it does not dictate a contrary result. In *Holmsley*, the defendant was charged with sodomy in the first degree, section 566.060. *Id.* at 408. Holmsley's counsel filed a motion for bill of particulars and, in so doing, achieved agreement with the State prior to trial that the State was limiting its criminal prosecution on the issue of the "purpose" for the act of sodomy charged as being committed for the purpose of terrorizing the victim, and at trial, the State's proffered (and accepted) instruction on the definition of deviate sexual intercourse "meant a sexual act done for the purpose of terrorizing the victim." *Id.* at 409. And yet, after the jury instruction on the definition of deviate sexual assault was submitted to the trial court by the State and read to the jury as one of its instructions on the law, the State argued in its closing argument that the definition of deviate sexual intercourse *also* included "sexual gratification"; defense counsel objected and requested a curative instruction that was rejected by the trial court. *Id.*

In its ruling, the *Holmsley* court noted that, when pressed by way of the motion for bill of particulars, the State opted to prosecute Holmsley exclusively on the theory that he committed the conduct for the purpose of terrorizing the victims, the jury was so instructed, and specifically: "The instructions submitted to the jury did not instruct that deviate sexual intercourse included sexual acts for the purpose of sexual gratification." *Id.* at 410-11. It was on this basis—after the jury had been instructed on the law about the definition of deviate sexual intercourse (as requested by the State) and such definitional instruction failed to include a reference to sexual gratification as one of multiple purposes for committing the conduct charged—the Supreme Court found that the State's closing argument injecting the alternative statutory "purpose" of sexual gratification

10

was error of such prejudice that a refusal by the trial court to give a curative instruction to the jury was reversible error:

> The prosecutor, therefore, gave a different instruction as to the meaning of deviate sexual intercourse during closing argument than the instructions submitted to the jury. By doing so, the state misrepresented the law *before the jury* and injected misleading and contradictory statements of law into the proceedings. Accordingly, the state's closing argument was improper.
>
> . . . .
>
> [T]he state's improper closing argument was prejudicial, and the trial court abused its discretion by failing to issue a curative instruction *under the facts and circumstances of this case*.

*Id.* at 411, 414 (emphasis added).

First, we note that *Holmsley* is not an instructional error case; it is a closing argument error case. Second, we note that the Supreme Court delineated that the State consciously chose to prosecute and instruct the case as one in which the only "purpose" for the act was "terrorizing the victim." There is no suggestion in *Holmsley* that, if substantial evidence existed as to sexual gratification being an alternative "purpose" for the defendant's conduct, the State would have been prohibited from prosecuting Holmsley on the alternative theories of a purpose for his conduct being *either* sexual gratification *or* terrorizing his victims; nor is there any suggestion that the trial court was prohibited from instructing the jury on the definition of deviate sexual intercourse by way of the disjunctive instruction that was used in the present case. Instead, *Holmsley* merely stands for the proposition that once the State chooses to limit the definition of deviate sexual intercourse and the trial court accepts such instruction and so instructs the jury—then that jury instruction becomes the law of *that* case "before the jury" which cannot be expanded in closing argument "under the facts and circumstances of [that] case."

11

Here, conversely, Weyant never filed a motion for bill of particulars at the outset of the case after being charged; he never argued that there was not substantial evidence of *both* the purpose of sexual gratification *and* terrorizing the victim; the State never limited itself to one of the two definitional disjunctive "purposes" for deviate sexual intercourse and properly submitted both to the trial court in the subject instruction; Weyant never objected to the particularity of the charging instrument nor the definitional instruction; the State presented substantial evidence at trial to support both disjunctives in the subject definitional instruction; and the jury was required to unanimously agree upon the criminal elements that Weyant "knowingly" had "deviate sexual intercourse" with C.W. on April 6, 2017, by the use of "forcible compulsion."

The trial court did not err, plainly or otherwise. Weyant's point on appeal is denied.

## Conclusion

The trial court's judgment is affirmed.

/s/ *Mark D. Pfeiffer*
Mark D. Pfeiffer, Judge

Thomas N. Chapman, Presiding Judge, and Anthony Rex Gabbert, Judge, concur.

12