

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JASON L. BERRY, | ) | |
| | ) | |
| Appellant, | ) | **WD82440** |
| v. | ) | |
| | ) | |
| | ) | **OPINION FILED:** |
| STATE OF MISSOURI, | ) | **March 31, 2020** |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Kevin D. Harrell, Judge**

**Before Division Four:** Karen King Mitchell, Chief Judge, and
Gary D. Witt and Edward R. Ardini, Jr., Judges

Jason Berry appeals, following an evidentiary hearing, the denial of his amended Rule 29.15[1] motion for post-conviction relief. In his sole point on appeal, Berry argues that the hearing court erred in denying his motion because he received ineffective assistance of counsel in that he was dissatisfied with his assigned public defender and was unable to have his case assigned to a different public defender. Finding no error, we affirm.

---

[1] All Rule references are to the Missouri Supreme Court Rules (2016) unless otherwise noted.

**Background**[2]

On the morning of May 23, 2014, Victim heard someone fiddling with the lock on the screen door of her home. She went to the door and asked the person what he wanted. The man, whom Victim later identified as Berry, opened the door and entered the house. Victim again asked Berry what he wanted, and he told her, "I'll show you what I want." Berry started pulling at Victim's clothing. She tried pushing him and kicking him, but Berry pushed Victim onto the couch on her back and started taking off her pants and underwear. Berry then penetrated Victim's vagina with his penis, touched her breast with his mouth, and choked her with his hands. Berry told Victim to lick his penis, and when she moved her head out of the way, he started choking her, causing her to faint.

When Victim regained consciousness, Berry was gone. She called the police and reported that a man had forced his way into her home and raped her. She described the man as a black male with collar-length hair and facial hair, who referred to himself as "Jason." Victim told police that Berry forced his way into her living room, pushed her in, pulled off her clothes, made her insert his penis into her mouth, kissed and sucked on her breasts, choked her, and inserted his penis into her vagina.

The police observed that the screen door to Victim's home was slit and the exterior handle appeared to be pulled away from the door frame. Berry's fingerprints were recovered from the exterior and interior sides of the storm door. Victim's living room was in disarray. A pair of women's underwear was on the floor near the couch, and there was a large stain on one of the couch cushions.

---

[2] The facts of Berry's underlying offenses here presented are taken from the decision issued in his direct appeal, *State v. Berry*, 506 S.W.3d 357, 360-61 (Mo. App. W.D. 2016), without further attribution.

Victim was taken to the hospital, where an examination revealed that she had petechiae markings on the right and left sides of her neck.[3] While Victim was at the hospital, a detective presented her with a photographic lineup, from which she identified Berry as her assailant.

At the time of the offense, Berry was living with his girlfriend and their children in a house about 200 feet from Victim's home. On the morning of the offense, when Berry's girlfriend left to take their child to school at 8:00 a.m., Berry was home asleep. When his girlfriend returned home at 9:25 a.m., Berry was gone, and the back door was unlocked, which was unusual because his girlfriend kept the doors locked. Berry returned home about 9:45 a.m. As part of their neighborhood canvas, the police interviewed Berry who claimed that he had not left the house all day.

Berry's DNA was found in samples taken from Victim's right breast and vagina. The State charged Berry by indictment with one count each of first-degree burglary, first-degree rape, first-degree sodomy, and first-degree sexual abuse. The State subsequently filed an information in lieu of indictment, charging Berry as a prior and persistent offender. While Berry was in jail awaiting trial, he called his girlfriend and told her that he needed her to testify that he was with her when she took their child to school the morning of the assault.

Berry testified at trial in his own defense and claimed that he did not rape, sodomize, or sexually abuse Victim. He stated that he was in Victim's house in 2012 but not on the day she was assaulted.

The jury found Berry guilty, and the trial court, having previously found Berry to be a prior and persistent offender, sentenced him to thirty years' imprisonment on the burglary count, seventy years' imprisonment on the rape count, and fifteen years' imprisonment on the sexual abuse count,

---

[3] At Berry's trial, a forensic nurse examiner testified that petechiae are tiny blood dots under the skin caused by blunt force trauma.

to be served consecutively.[4]  On direct appeal, this court affirmed Berry's convictions and sentences, with the exception of his sentence for first-degree sexual abuse.[5]  *State v. Berry*, 506 S.W.3d 357 (Mo. App. W.D. 2016).  We issued our mandate on February 1, 2017.

Berry timely filed his *pro se* Rule 29.15 motion, and appointed counsel filed a timely amended motion.

The motion court held an evidentiary hearing, which included testimony by Berry and trial counsel, among others.  On direct examination, Berry testified that trial counsel did not show interest in Berry's case or demonstrate any "fight."  Trial counsel referred to Berry by the wrong name and discussed a different case with him and, as a result, Berry did not trust trial counsel.  At Berry's request, trial counsel moved to withdraw[6] and Berry filed his own motion for reassignment of counsel;[7] both motions were denied.  On cross-examination, Berry testified that trial counsel met with him eight times, explained the evidence against him, relayed plea offers to him, and advised him of the benefits of pleading versus the risks of going to trial.  Berry also testified regarding "a lot" of motions he had wanted trial counsel to file, but Berry could not recall the nature of those motions.

---

[4] The jury found Berry not guilty of sodomy.

[5] At the conclusion of Berry's sentencing hearing, the court *orally* pronounced a thirty-year sentence on the sexual abuse count, but the court's *written* judgment issued later the same day reflected a fifteen-year term of imprisonment for that count.  *State v. Berry*, 506 S.W.3d 357, 364 (Mo. App. W.D. 2016).  The State moved to correct the sentence *nunc pro tunc* because the thirty-year sentence orally pronounced by the court exceeded the maximum term of fifteen years allowed by law, and the court entered a *nunc pro tunc* order granting the State's motion.  *Id.*  This court concluded that the imposition of a new sentence *nunc pro tunc* violated Berry's due process rights because he was not personally present for resentencing, and thus, there was clear, obvious error affecting his substantive rights. *Id.* at 365.  Accordingly, we vacated his sentence for first-degree sexual abuse and remanded for resentencing on that count consistent with our ruling.  *Id.*  Berry was subsequently resentenced to fifteen years' imprisonment on the sexual abuse count.

[6] Trial counsel moved to withdraw following a meeting with Berry, during which Berry told counsel he was fired and asked counsel to file the appropriate paperwork with the court.  Trial counsel told Berry that he would have to hire counsel or represent himself; another public defender would not be assigned to the case.

[7] Berry's motion alleged that he and trial counsel both believed that they had an irreconcilable personality conflict and a difference of opinion as to how Berry's case should be litigated.

Trial counsel testified that he met regularly with Berry and felt their communication was good. Trial counsel was not aware of any breakdown in communication with Berry "other than [Berry] did not enjoy hearing what the evidence in the case was." Trial counsel was not aware of any other complaints by Berry. Trial counsel felt comfortable advising Berry about the evidence against him and his options regarding pleading or proceeding to trial.

On November 26, 2018, the motion court issued findings of fact and conclusions of law denying Berry's amended Rule 29.15 motion. The motion court concluded that Berry failed to demonstrate "any conflict of interest, irreconcilable conflict, or complete breakdown in communication" with trial counsel. The court found, "at best, [Berry] established a personality conflict" with trial counsel and "such a personality conflict does not entitle one to a new public defender; not only does the law not require such a remedy, but . . . the administrative burdens of such a rule would be immense."

Berry appeals.

## Standard of Review

We "review[] the denial of [a motion for] post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Watson v. State*, 520 S.W.3d 423, 428 (Mo. banc 2017). "A motion court's findings and conclusions are clearly erroneous only if . . . , after reviewing the entire record, [we are] left with the definite and firm impression that a mistake has been made." *McKay v. State*, 520 S.W.3d 782, 785 (Mo. banc 2017). "The motion court's findings are presumed correct." *Mallow v. State*, 439 S.W.3d 764, 768 (Mo. banc 2014). "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of witnesses and is free to believe or disbelieve the testimony of any witness, including that of the [m]ovant." *Pendleton v. State*, 570 S.W.3d 658, 661 (Mo. App. W.D. 2019) (quoting

*Heller v. State*, 554 S.W.3d 464, 468 (Mo. App. W.D. 2018)). As the movant, Berry bears the burden of proving his claim for relief by a preponderance of the evidence. Rule 29.15(i).

## Analysis

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test." *Watson*, 520 S.W.3d at 435 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "Under *Strickland*, [a movant] must demonstrate: (1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, and (2) [movant] was prejudiced by that failure." *Id*. We presume that counsel both rendered adequate assistance and exercised reasonable professional judgment and that any challenged action was based upon sound trial strategy. *Barton v. State*, 432 S.W.3d 741, 749 (Mo. banc 2014). The moving party must present evidence to rebut and overcome that presumption. *State v. Tokar*, 918 S.W.2d 753, 768 (Mo. banc 1996). "To demonstrate prejudice [caused by counsel's ineffective assistance], a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the [trial] would have been different." *Barton*, 432 S.W.3d at 749 (quoting *Johnson v. State*, 333 S.W.3d 459, 463 (Mo. banc 2011)). "If either the performance prong or the prejudice prong is not met, then [the court] need not consider the other," and the movant's claim must fail. *Neal v. State*, 379 S.W.3d 209, 216 (Mo. App. W.D. 2012) (citing *Strickland*, 466 U.S. at 687).

In his sole point on appeal, Berry argues that the hearing court erred in denying his amended Rule 29.15 motion because the Public Defender, knowing that Berry was dissatisfied with counsel, failed to mediate or assign a different attorney, thus requiring Berry to proceed to trial with counsel with whom he was dissatisfied. While Berry's point relied on frames the issue

6

in terms of failures by the Public Defender's office, to claim ineffective assistance of counsel, Berry must show that trial counsel's performance fell below an objective standard of reasonableness and Berry was thereby prejudiced. "Irrespective of whether there were problems with the public defender system, in order to claim ineffective assistance of counsel, [movant] must show that his trial counsel provided deficient performance and that it was prejudicial." *Prince v. State*, 390 S.W.3d 225, 236 (Mo. App. W.D. 2013) (quoting *Johnson v. State*, 693 N.E.2d 941, 953 (Ind. 1998)). Thus, we focus on Berry's claim that he was dissatisfied with trial counsel.

Berry claims he was dissatisfied because (1) trial counsel did not demonstrate sufficient attention to or interest in Berry's defense, causing Berry to lose faith in trial counsel; (2) the two had a personality conflict; (3) the two disagreed regarding how Berry's case should be litigated; and (4) trial counsel refused to file unspecified motions that Berry wanted to pursue.[8]

"Although a criminal defendant enjoys 'a constitutional right to legal counsel, he does not have an absolute right to be represented by counsel of his own choosing.'" *State v. Cobbins*, 445 S.W.3d 654, 658 (Mo. App. E.D. 2014) (quoting *State v. Briggs*, 318 S.W.3d 203, 206 (Mo. App. W.D. 2010)). "The right to be represented by counsel of one's own choosing is qualified by the public's right to the effective and efficient administration of justice." *Id.* at 659 (quoting *State v. Rice*, 249 S.W.3d 245, 251 (Mo. App. E.D. 2008)). "To warrant substitution of appointed counsel, a defendant must demonstrate justifiable dissatisfaction with counsel." *Johnson v. State*, 510 S.W.3d 881, 884 (Mo. App. E.D. 2017). "Mere dissatisfaction with counsel is not enough; a defendant's dissatisfaction must be justifiable before the Sixth Amendment requires the appointment of substitute counsel." *Id.* "Examples of justifiable dissatisfaction include a conflict

---

[8] Neither Berry nor trial counsel recalled the nature of the motions, but trial counsel testified that, while he occasionally files a motion suggested by a client, he typically does not find such motions worthy of filing. As the movant, Berry must prove his claim by a preponderance of the evidence. Rule 29.15(i). Berry fails to meet that burden where he cannot even recall the nature of the motions he wanted trial counsel to file.

of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant[; d]isagreement about trial strategy or a general dissatisfaction with the amount of time a defendant is able to spend with counsel is insufficient to establish a total breakdown in communication." *Id.* "Whether counsel should be permitted to withdraw rests within the sound discretion of the trial court." *Id.*

In *Johnson*, the movant argued that he wanted counsel to withdraw before trial because they had an argument about whether counsel had time to watch videotape evidence with movant. *Id.* Movant testified that counsel said she did not have time to review the video with him, causing him to lose faith in her. *Id.* The court held that movant failed to demonstrate justifiable dissatisfaction with counsel where the record showed that, after the alleged irreconcilable conflict arose, movant and counsel continued to communicate and counsel continued to represent movant through trial and sentencing. *Id.* at 885. The court concluded that movant failed to show counsel was ineffective in continuing to represent movant and not moving to withdraw as his attorney, and movant likewise failed to show how he was prejudiced by counsel's failure to move to withdraw. *Id.* at 884.

Likewise, in the present case, Berry failed to demonstrate justifiable dissatisfaction with trial counsel. Berry offered no evidence of an actual conflict of interest. Instead, he argued that there was an irreconcilable conflict and a complete breakdown in communication, but the evidence indicates otherwise. Berry testified that trial counsel met with him eight times, explained the evidence against him, relayed plea offers to him, and advised him of the benefits of pleading versus the risks of going to trial. Trial counsel testified that he met regularly with Berry and felt their communication was good. Trial counsel was not aware of any breakdown in communication with Berry "other than [Berry] did not enjoy hearing what the evidence in the case was." Trial counsel

testified that he felt comfortable advising Berry about the evidence against him and his options regarding pleading or proceeding to trial. The motion court found trial counsel's testimony credible and the court was free to do so. *Pendleton*, 570 S.W.3d at 661. And, to the extent Berry disagreed with counsel about trial strategy, such disagreement is insufficient to establish an irreconcilable conflict or a total breakdown in communication. *Johnson*, 510 S.W.3d at 884.

Thus, Berry failed to present evidence to rebut or overcome the presumption that trial counsel rendered adequate assistance and exercised professional judgment. Because we conclude that trial counsel's conduct did not fall below an objective standard of reasonableness, we need not address the prejudice prong of the *Strickland* test.[9]

For these reasons, the motion court did not clearly err in denying Berry's claim that he received ineffective assistance of counsel because he was dissatisfied with his assigned public defender and was unable to have his case assigned to a different public defender.

Point I is denied.

## Conclusion

The motion court did not clearly err in denying Berry's amended Rule 29.15 motion for post-conviction relief. The trial court's judgment is affirmed.

Karen King Mitchell, Chief Judge

Gary D. Witt and Edward R. Ardini, Jr., Judges, concur.

---

[9] Berry argues that the refusal to mediate or reassign counsel constituted a "structural error," and thus, prejudice should be presumed. While a movant claiming constructive denial of counsel may not be required to plead and prove prejudice, constructive denial of counsel requires either a complete absence of counsel or a complete failure by counsel to subject the State's case to adversarial testing. *Polk v. State*, 539 S.W.3d 808, 815-18 (Mo. App. W.D. 2017). Where, as here, counsel actively participated throughout trial and sentencing and Berry was found not guilty of one charge, the record does not support a finding of constructive denial of counsel.

9